# CHARLESTON

WILLIAMS v. S. M. SMITH INSURANCE AGENCY
and
FIRST NATIONAL BANK OF SUTTON v. S. M. SMITH INSURANCE AGENCY.

Submitted December 15, 1914.    Decided January 19, 1915.

1.  CORPORATIONS—*Officers—Powers—Bills and Notes.*
       A president has no inherent power to negotiate loans and issue notes therefor in the name of the corporate entity of which he is such officer. And, unless it ratifies such action on his part, or for

an unreasonable length of time after knowledge thereof acquiesces therein, the notes so executed are not enforceable as liabilities against the corporation.  (p. 500).

2.  SAME—*Officers—Execution of Notes—Ratification and Acquiescence.*
Such ratification or acquiescence results from an appropriation of the proceeds, so derived, to the beneficial use of the corporation, or its failure for an unreasonable length of time, after knowledge of the unauthorized act, to restore the proceeds thereof to the source from which they were derived, or from a course of dealing on its behalf, without objection, so obvious and often repeated as reasonably to induce belief. in corporate authorization for such purpose. (p. 500).

3.  RECEIVERS—*Trust Fund—Insurance Premiums.*
Premiums on policies of insurance, collected by the receiver of an insolvent soliciting agent, constitute a trust fund for the use and benefit of the insurers as *cestuis que trustent,* to the exclusion of general creditors, except as to the surplus remaining after payment of claims primarily chargeable against it.  (p. 496).

4.  APPEAL AND ERROR—*Presentation Below—Objection—Decree—Findings.*
Objections to a decree, based upon a master's findings not excepted to before confirmation, and not apparently erroneous, are ineffectual as ground for reversal in an appellate court.  (p. 499).

5.  BILLS AND NOTES—*Proof of Handwriting—Practice.*
The common law requirement as to proof of handwriting is not altered except as provided by §40, ch. 125, Code.  (p. 501).

(ROBINSON, PRESIDENT, dissenting.)

Appeal from Circuit Court, Mercer County.

Suit by C. L. Williams, receiver, etc., against the S. M. Smith Insurance Agency and others.  From the decree, plaintiff and the First National Bank of Sutton separately appeal.

*Reversed in part.    Affirmed in part.    Remanded.*

*Sanders & Crockett,* for appellant Williams.  *Hall Bros.,* and *D. C. T. Davis, Jr., Staige Davis,* and *Connor Hall,* for appellant Bank.

*A. W. Reynolds,* for appellees.

LYNCH, JUDGE:

As receiver of the Fidelity Banking & Trust Company, an insolvent state banking corporation, C. L. Williams instituted

this suit in the circuit court of Mercer county, alleging in the bill the insolvency of the sole defendant, the S. M. Smith Insurance Agency, another corporation, an indebtedness due from it to the Banking & Trust Company, and praying the appointment of a receiver of the assets of the Smith Agency. Though the record does not disclose any order appointing a receiver pursuant to the prayer of the bill, the orders entered show that C. A. Bradshaw acted in that capacity and as such collected the fund in controversy in this suit, amounting to $8665.03 less expenses and attorney fees for services rendered, as to which no objection is raised.

· Subsequently, the several fire insurance companies for whom as agent the Smith Agency was authorized to solicit insurance, countersign policies, collect and remit premiums, less commissions allowed to it, and the American Surety Company of New York, for which the Smith Agency was also agent, became parties defendant by petition, and claimed the entire fund collected by Bradshaw, so far as necessary to the payment of their claims, to the exclusion of all other creditors of the Smith Agency, excepting the American Surety Company, which, by virtue of premiums due on surety bonds procured through the Smith Agency and collected by Bradshaw, made a like claim on its behalf. These claims the lower court by its decree sustained; and Williams and the First National Bank of Sutton have appealed.

In their several petitions, the insurance companies alleged that in September prior to the appointment of Bradshaw as receiver on October 3, 1911, they revoked the authority of the S. M. Smith Insurance Agency to represent or act for them in any capacity. They do not, however, fix any definite date therefor, further than to aver a revocation late in September. Thereafter, the Smith Agency had no authority to represent or act, nor did it undertake to represent or act, for and on behalf of any of these companies in any respect or for any purpose. It made no effort to collect, and did not collect, any premiums then due and unpaid on policies or surety bonds theretofore issued by any one or more of them pursuant to its negotiations as their former soliciting agent.

The money due and unpaid on policies and bonds so issued prior to that date was not due and payable to the Smith

Agency, as and for its own use for payment to its general creditors or otherwise. Neither before, at or subsequent to that date had it any proprietary right or interest in such premiums, except to the extent of commissions for collections pursuant to the terms of the agency contract. Prior to such revocation or the appointment of Bradshaw, it was empowered to solicit insurance, countersign policies, solicit and countersign bonds, collect and remit premiums less commissions. Other authority it had none from its principals. At no time did the collections belong to it.

The collections made by Bradshaw, so far as they arose from premiums due on policies and bonds, were and remained the money of the principals, not of the agency. It could not lawfully appropriate them to its personal use or benefit. They constituted a trust fund, for the exclusive use and benefit of the companies, the *cestuis que trustent,* previously represented by the agent. They were so treated, and we think properly, by the decree appealed from. *In re Brown & Co.,* 189 Fed. 432; *Bank* v. *Insurance Co., infra;* 1 Clark & Skyles on Agency §§421, 429; *Baker* v. *Bank,* 100 N. Y. 31, 53 Am. Dec. 150. And, obviously, the fund now in controversy did not go into the hands or under the control of the Smith Agency. That fund, for the most part, arose from collections made by Bradshaw from premiums due and unpaid on October 3, 1911, the date of his appointment. That fact clearly appears; it is virtually conceded. Bradshaw held the fund subject to distribution and apportionment as the court should direct. His authority was so circumscribed.

Nor was there any commingling of the moneys derived from that source with moneys due the Smith Agency in its own right, except commissions allowed and deducted, and except the proceeds of a few items of tangible personal property readily separable from premiums collected. These funds the receiver has kept in an account, readily severable, showing the aggregate of the collections made by him and the premiums collected on policies and bonds issued by the various companies served by the Smith Agency. Besides, it is not an imperative requirement that such funds be kept wholly distinct from other funds of the agent, or, as suggested in argument, that the beneficiaries must clearly identify the fund claimed by

them. It is sufficient if the fund can be separated for the purpose of an accounting; or, "subject to some limitations, the principal may follow the fund into the hands of third persons". 1 Clark & Skyles on Agency §421. And, as especially pertinent to the facts here involved, these authors, at §429, say: "In case the agent becomes bankrupt, neither the property nor its proceeds would pass to the assignee in bankruptcy for general administration, but would be subject to the paramount claim of the principal. As such trust fund or property never belongs to the agent, his creditors would not be injured if they are turned over to his principal". *Manufacturing Co.* v. *Dehon,* 5 Pick. 7, 16 Am. Dec. 367; Story on Agency § 229; *Baker* v. *Bank, supra; Clark* v. *Bank,* 1 N. Y. 498; *Surety Co.* v. *Carroll County,* 194 Fed. 593. And there is authority holding that where an agent or fiduciary mixes trust funds with his own moneys "the whole will be treated as trust property, except so far as he may be able to distinguish what is his. This doctrine applies in every case of a trust relation, and as well to moneys deposited in bank and to the debt thereby created as to every other description of property". *Bank* v. *Insurance Co.,* 104 U. S. 54; *Surety Co.* v. *Carroll County, supra.* So in *Roca* v. *Byrne,* 145 N. Y. 182, 45 Am. St. 599, it is held that if an agent receives of his principal bills to be collected and thereafter used to satisfy such obligations as the principal may incur, and which when collected the agent deposits in bank to his own credit, the equitable title to the moneys so deposited is in the principal, and on the agent's insolvency the principal may recover them in preference to the other creditors of the agent.

Since, as observed, the premiums collected by Bradshaw were not the money or property of the Smith Agency, they ought not to be diverted from the rightful owners and applied to the payment of the creditors of the Agency. The rights of such creditors are inferior to those of the legal claimants. The general creditors of the Smith Agency may charge any property or funds owned by their debtor or to which he may have a valid legal claim; but they can not divert a trust fund, in which it has no proprietary right or interest, from its proper channels. As to the greater part of the fund in controversy, their rights are wholly subordinate

to the claims of the insurance companies and the surety company; and the circuit court properly so held, and directed a preferential application of the funds, so far as necessary fully to pay the balances due these companies, the real beneficiaries.

For appellant Williams it is also argued that the decree is erroneous, because of excessive amounts allowed in favor of the various beneficial claimants of the funds involved. But the amounts decreed to them were fixed by the report of the commissioner to whom the cause was referred, to which the appellant did not except. It is a general rule of procedure, observed in this state, that objections to a decree based upon a master's findings, to which no exceptions were taken in the lower court, can not be made in the appellate court for the first time, unless the report is erroneous upon its face. *State* v. *King,* 47 W. Va. 437; *Lynch* v. *Henry,* 25 W. Va. 422; *Poling* v. *Huffman,* 48 W. Va. 639.

Nor is it necessary to enter into a general discussion upon the merits of the contention urged by appellant Williams as to the method of conducting the business of the Smith Agency in the collection and remission of premiums due the several companies represented by it. As we view it, there is nothing in the record to show the relation of debtor and creditor between them. The mere fact of delay in collecting and remitting premiums on policies does not establish that relation, nor does the payment by the Smith Agency out of a general account collections on behalf of its principals have that effect. The proof tends to show the agency pursued the custom usually obtaining among insurance companies and their agents. The only question, then, properly arising in the case, is whether the money claimed constitutes a trust fund payable to the *cestuis que trustent* in satisfaction of their claims, notwithstanding the defective system adopted by the Smith Agency for collections and remittances. The paramount inquiry is, to whom does the fund belong, the beneficiaries or to the Smith Agency? So far as derived from premiums on policies or bonds issued by the several companies at the solicitation of the Smith Agency, it belongs to the principals, not to the agent. And, so far as can be fairly ascertained from the somewhat obscure character of the record, it seems

reasonably clear the fund in dispute was, for the most part, derived from that source. The deposition of Bradshaw and his reports and the report of the commissioner so show. There is, therefore, no difficulty in correctly ascertaining the sources from which the fund was derived.

Each of the appellants urge reversal on the further ground that the decree virtually held invalid notes made or negotiated by the S. M. Smith Agency, because executed or negotiated by its president in its corporate name without authority therefor by the corporation. No pleading challenged these obligations, or the manner of their execution. They were produced by the payee banks before the commissioner, and he allowed them as charges against the funds in the hands of Bradshaw. On exceptions by the insurance and surety companies, the notes were disallowed and virtually held to be not enforceable or chargeable against the assets of the Smith Agency or any part of them, presumably because not expressly authorized by the corporation, or ratified by it with full knowledge of the existence of the loans for which the notes were executed.

According to *Bank* v. *Kimberlands,* 16 W. Va. 555; *Bank* v. *Manufacturing Co.,* 56 W. Va. 446; *Thompson* v. *Manufacturing Co.,* 60. W. Va. 42, and *Varney* v. *Lumber Co.,* 70 W. Va. 169, the president of a corporation has no inherent power to negotiate loans or enter into contracts binding the corporation. As to it his acts in these particulars are not binding, unless authorized by some resolution, or ratified expressly by the corporate entity represented by him, or by a course of dealing or conduct on his part with its knowledge or consent, or by its taking the benefits of such contracts, or inducing the belief on the part of those so dealing with it through the intervention of its officer that it had empowered him to act for and in its behalf. But, except what appears solely from the face of the several notes, there is nothing in the record tending to show either express authority, or any one or more of the several circumstances from which to raise a presumption of the grant of authority or that the corporation acquiesced in the acts of the president by taking and appropriating to its own use the benefits of the loans with full knowledge of his action, or that it failed for an un-

reasonable length of time after such knowledge to restore the proceeds of the loans to the sources from which they came. From this knowledge, and from any one or more of such circumstances, would arise by implication a ratification of the acts of the officer, whereby the corporation would become as effectually bound for payment of the debts as if expressly authorized by it at or before the inception of the negotiations for the loans and the execution of the notes therefor.. 2 Thomp. Corp. (2d Ed.) §§2019, 2020. Such ratification would necessarily be inferred from a deposit of the proceeds of the notes in bank to the credit of the Smith Agency and its application of them to the payment of its obligations or to defraying the expenses incident to the business authorized by its charter. The mere fact, however, that the president negotiated the loans and executed the notes, without express authority and without a ratification implied from circumstances, will not impose a liability therefor on the corporation. How the money was used, how and to what it was applied, and for whose use and benefit it was appropriated, are questions as to which proof ought to have been taken, to the end that justice might have been done to the corporations interested in the final result of this litigation.

Nor are we unmindful of the proof which clearly shows that the two certificates of deposit issued by the First National Bank of Sutton (the second being in renewal of the first) stated that the money they represented was deposited in that bank to the credit of the Smith Agency, and, inferentially, that it was paid to the assignee of the second certificate containing the endorsement of the Smith Agency. Still, it does not necessarily follow that the Smith Agency received the benefit of the money so paid, or that it had knowledge, actual or constructive, of the deposit or disposition of the proceeds of the note executed by the Agency through the negotiations of its president.

Moreover, there was no legitimate proof of the due execution and negotiation of the notes by Smith as president. Their mere production by the banks before the commissioner was not legally sufficient. Proof of execution and negotiation was essential. The common law rule requiring proof of the signature of the maker remains unaltered by §40, ch. 125,

Code. It dispenses with such proof only where the declaration or other pleading alleges that "any person made, endorsed, assigned or accepted the writing in controversy, and the fact averred is not denied by an affidavit filed with the plea which puts it in issue". The statute applies only where there is a pleading, not traversed, expressly averring the due execution of the instrument sought to be enforced against the apparent maker. *Kelley* v. *Paul*, 3 Gratt. 191; *Shepherd* v. *Fry*, 3 Gratt. 442; *Horner* v. *Amick*, 64 W. Va. 172; *Land Co.* v. *Callison*, 16 W. Va. 361. As to the notes here involved, there was no such pleading, as already observed; and, as we construe the section cited, proof of the execution and negotiation of the notes was essential to their enforceability.

As proof evidently was available to show either the existence or non-existence of the essential facts and circumstances requisite for the establishment of the enforceability of the notes in controversy, and to the end that justice may be promoted—in view of our holdings in *Iron Works* v. *Bank*, 82 S. E. 614; *Cook* v. *Lumber Co.*, 82 S. E. 327, and *Wildell Lumber Co.* v. *Turk*, 83 S. E. 83, we reverse the decree appealed from in so far as it directs a distribution of the residue of the fund in the hands of receiver Bradshaw after payment of the preferential claims allowed, including deductions in his favor; and in all other respects we affirm the decree, and remand the cause for further proceedings therein in conformity with the principles herein announced and otherwise according to principles governing courts of equity.

*Reversed in part. Affirmed in part. Remanded.*