# CHARLESTON.

## T. J. FLANAGAN v. FLANAGAN COAL COMPANY.

### Submitted March 8, 1916.   Decided March 14, 1916.

1. NEW TRIAL—*Excessive Verdict—Cure by Remittitur.*

    Unless the excess of a verdict is clearly ascertainable from data in the record, the trial court cannot reduce the verdict or suffer a remittitur; and in no case without such remittitur can the court of its own motion abate any part of the verdict and pronounce judgment for the balance. Its only course when a remittitur is refused is to set aside the verdict and award a new trial. (p. 759).

2. CORPORATIONS—*Officers—Powers—Execution of Notes.*

    There is no inherent authority in the president of a corporation to execute notes or other instruments on its behalf. (p. 759).

3. SAME—*Resolution of Directors—Validity—Interest of Member.*

    The resolution of a board of directors of a corporation, passed at a meeting at which one of its members interested therein and necessary to a quorum is present, and voting in favor thereof, is prima facie fraudulent and void. (p. 761).

4. SAME — *Unauthorized Acts of Officers—Ratification—Subsequent Repudiation.*

    Ratification of an unauthorized act of the president of a corporation by a board of directors likewise constituted, or by a board lawfully constituted, ignorant of the facts connected with the transaction to which it relates, will not preclude such corporation from thereafter repudiating the same for good cause shown. (p. 762).

5. SAME—*Misconduct of Officer—Action by Corporation—Defense.*

    Where an accounting officer of a corporation, as treasurer, participates in the irregular and careless conduct of the business, and suffers the moneys loaned by him or borrowed on behalf of his company to be paid over to another officer and commingled with the latter's private funds, and has not accounted for the funds coming to his own hands as such officer, he will not be permitted to pick out certain items of money loaned by him or goods or property furnished, and in a suit against his corporation recover therefor without showing the actual state of the account between him as such accounting officer and his company, and the actual balance due him, if any. (p. 763).

Error to Circuit Court, McDowell County.

77 W. Va.

Action by Thomas J. Flanagan against the Flanagan Coal Company. Judgment for plaintiff, and defendant brings error.

*Reversed, verdict set aside, and new trial awarded.*

*Strother, Taylor & Taylor* and *Harold A. Ritz,* for plaintiff in error.

*S. C. Marshall* and *Sanders, Crockett & Kee,* for defendant in error.

MILLER, JUDGE:

Writ of error by defendant to the judgment of the circuit court against it in favor of the plaintiff for $3,496.95, interest and costs.

The action is assumpsit, upon the common counts, and a special count, declaring upon a note dated February 1, 1912, alleged to have been made by defendant, through its president, James P. Flanagan, thereunto authorized, payable upon demand, to the plaintiff, for the sum of $3,496.40, at the First National Bank, Welch, West Virginia. And with the declaration a bill of particulars was filed, as follows: "Flanagan Coal Company, to Thomas J. Flanagan, Dr., 1913, Dec. 5, To use of two horses for 1180 days at $1.00 per day, $1180.00; 1913, Dec. 5, To use of one horse for two years and one month at rate of 20 days per month 500 days at 50 cts. per day, 250.00; 1913, Dec. 5, To use of wagon, harness and teamster equipment for 1180 days at 25 cts. per day, 295.00; 1912, May 1, To mds. sold Flanagan Coal Company, 330.83; 1911, Oct. To money loaned you, 250.00; 1911, Oct. To money loaned you, 275.00; 1912, Oct. To money loaned you, 275.00; 1912, Dec. To cash loaned you, 375.00; 1913, Feb. To cash paid to workmen for you and for freight and express paid for you, 265.57, Total, $3496.40; 1915, Mar. 1, To int. from August 1, 1913, 332.15; 1915, Mar. 1, To total amount due, $3828.65."

The pleas of defendant upon which issues were joined by plaintiff are non-assumpsit, and non est factum as to the note.

The verdict of the jury was for plaintiff for $3,828.65, the full amount of the demand sued for, which verdict, on motion of defendant to set it aside and in arrest of judgment thereon,

the court refused to vacate, and the plaintiff refusing, as required, to enter a remittitur for $331.70, recited in the judgment order as the difference between the amount paid by him and which he charged his company for the stock of goods mentioned in his bill of particulars, the court, of its own motion, both parties objecting and excepting, abated that amount from the verdict and pronounced the judgment complained of for the balance.

The first point made against the judgment and counter-assigned as error by the plaintiff is that the court erroneously and without a remittitur by plaintiff abated the amount of the verdict and pronounced judgment for the balance. Our decisions say that unless the amount of the excess in a verdict is fairly and reasonably ascertainable from data in the record and the party in whose favor the verdict is given enters a remittitur, the court should set the verdict aside; and that in no case can the court of its own motion arbitrarily reduce the verdict and enter judgment for the amount that may remain. *Clark* v. *Lee,* 76 W. Va. 144, 85 S. E. 64, and cases cited. In this case the item in the bill of particulars of May 1, 1912, for merchandise sold defendant company, was $330.83, not $331.70, the amount abated from the verdict. Besides the evidence showed that plaintiff paid for these goods about $28.00, and if entitled to recover anything he was clearly entitled to credit in some way for so much of that item. But assuming that the verdict is excessive and that the court from accurate data could have ascertained the correct amount, the plaintiff declining to enter a remittitur, the court could have done nothing but set the verdict aside and award the defendant a new trial. Whether plaintiff was in fact entitled to charge his company with the large profit on this stock of goods will be considered in another connection.

It is next complained that the court erroneously admitted in evidence, over defendant's objection, the note counted on in the special count of the declaration. This note was for the aggregate amount of the items in plaintiff's bill of particulars, and interest. At the point of its introduction in evidence, in connection with James P. Flanagan's testimony, no evidence had been offered showing his authority to execute this or any other note on behalf of his company; nor did

it then appear from the evidence on what account or for what consideration the note had been given. While the witness says that the fact of his execution of the note became known to the company after its execution, he does not refer his act in the first instance to any authority of the board of directors or stockholders, and as it was subsequently developed in the course of his testimony in chief and on cross-examination, he relied mainly on the alleged ratification of his act by the board of directors. We have decided that there is no inherent authority in the president of a corporation to execute notes on its behalf. *Varney & Evans* v. *Hutchinson Lumber & Mfg. Co.,* 70 W. Va. 169; *Williams* v. *S. M. Smith Insurance Agency,* 75 W. Va. 494, 84 S. E. 235. And as no express authority was shown to execute the note in question, and no implied authority from the course of dealing sufficiently appeared, we do not think the note was admissible, and that it should have been excluded, certainly at the stage of the evidence at which it was offered.

But the contention is that the consideration for the note, and the authority to execute it, subsequently appeared from the evidence of this witness and the evidence of the plaintiff and other witnesses, of the alleged ratification of the president's act by the board of directors and of the stockholders of the company. This evidence shows that at the date of the note no new consideration therefor passed to the defendant. The money loaned and charged in the account had been borrowed months before the date of the note, and the alleged services of the horses and other equipment had all or practically all been rendered before that time, at least nothing new by way of consideration was parted with by plaintiff at that time.

The question then is presented, does the subsequent evidence of ratification, etc., cure the error in prematurely admitting the note in evidence, either in support of the general account or bill of particulars filed, or the special count on the note? The alleged ratification by the board of directors relied on was at a meeting thereof held at Welch, McDowell County, March 4, 1913, pursuant to notice of the president dated February 25, 1913, the minutes of which meeting were introduced in evidence, over the objection of defendant. These

minutes show that of the five directors of the company only three were present, namely, James P. Flanagan, Thomas J. Flanagan, the plaintiff in this case, and John F. Butler, all of whom had been the managing officers and directors of the corporation. That part of those minutes material in this connection is as follows: "Moved by T. J. Flanagan and seconded by J. F. Butler, Whereas it became necessary for the president of this company, to borrow money from the different banks and from different individuals, to carry on the development and construction work of this company, and to meet losses sustained by reason of the failure of C. W. Comptan, and the Chaffin Coal Co., and others, who purchased coal and failed to pay for it during the past year and whereas it became necessary to issue notes of the company, to those different banks and to the different individuals therefor, therefore be it resolved, that we the directors of said company do here and now ratify and confirm the action of the president in those matters, and further resolve that the company pay those obligations off as soon as possible, or take the necessary proceedings to pay them off. Affirmative, Jas. P. Flanagan, Thos. J. Flanagan, John F. Butler."

Thus it appears that neither the note sued on, nor any particular notes, are specifically referred to in the resolution. But it is contended that this note and the notes issued to James P. Flanagan and to Butler, all interested, were mentioned at this meeting; and furthermore that subsequently and subsequent to the meeting of the stockholders in March, 1913, at which a new board of directors was elected, and at a meeting of the new board, held thereafter, these notes and other notes were mentioned, and that no objection to their execution was then or ever thereafter made by the directors or stockholders, wherefore it is contended their execution was thereby acquiesced in and ratified. It is pertinent to say, however, that no minute of any meeting of the directors or stockholders, showing such action or any action in relation to said notes was introduced in evidence. At most the evidence amounts to no more than proof of an informal notice of the fact of the execution of said notes without action thereon.

Respecting the minutes of the board of directors of March 4, 1913, so far as they may be said to relate to the note sued

on, the action was prima facie void. We have distinctly decided, with reference to our statute, section 52, chapter 53, serial section 2884, Code 1913, that a resolution of a board of directors, passed at a meeting at which one of their number interested therein and necessary to a quorum is present, and voting in favor thereof, is prima facie fraudulent and void. *Sweeny* v. *Sugar Refining Co.,* 30 W. Va. 443; *Railway Co.* v. *Woodyard,* 46 W. Va. 558; *Arnold* v. *Knapp,* 75 W. Va. 804. To the same effect is *Triplett* v. *Fauver,* 103 Va. 123, in which the Virginia court holds as to such matters the board is without a quorum and its action is invalid. "A director who is disqualified by reason of personal interest in the matter before a directors' meeting loses, pro hac vice, his character as a director, and he cannot be counted for the purpose of making out a quorum. Nor can the vote of a director who is so disqualified be counted for the purpose of determining whether a resolution has been passed by a majority vote." Clark & Marshall on Private Corporations, section 681.

It appears in this case and it is claimed as a fact, that at the time of the resolution James P. Flanagan and John F. Butler held notes executed by the former as president, and that on the note so executed to himself, James P. Flanagan now has a suit pending against his company to recover the amount thereof. Such alleged ratification of a previously unauthorized act by a director beneficially interested in the transaction would stand on no higher plane than the original act. And if the act had been by a lawfully constituted board of directors, ignorant of the facts connected with the transaction to which it relates, such ratification would not preclude the company from thereafter repudiating it for good cause shown. *Thompson* v. *Laboringman's M. & M. Co.,* 60 W. Va. 42; 10 Cyc. 1079.

For these reasons we do not think the minutes of the directors' meeting were admissible in evidence to show ratification of the unauthorized act of Flanagan, president, and that the same were not material or sufficient to give validity to the note sued on, so as to bind the corporation. Nor do we think the evidence that the execution of this note may have been subsequently reported to the stockholders or direc-

tors, conclusive upon the defendant, or even prima facie evidence of defendant's liability on the note.

Moreover, there is no pretence that the directors or stockholders were notified of the large claim of plaintiff for horse hire, etc., nor of the purchase of the stock of goods, upon which plaintiff undertook to realize a profit of 1200 per cent. No act of the directors or stockholders is referred to for ratification of that contract. All that is found in the minutes of the directors' meeting claimed as a ratification of the president's act, is that he had borrowed money and executed the company's notes therefor. This could certainly not be relied on as a ratification of the note to the extent of the items charged for the services of horses, etc.

Wherefore, the note and the minutes of the directors' meeting and the evidence of the fact of the execution of the notes, unratified, being excluded, nothing remains of plaintiff's case except his account for borrowed money, horse hire, etc., and what evidence remains in the case tending to support the same. Plaintiff was treasurer of the defendant company; it is admitted that at least the larger part of the money alleged to have been loaned by him did not go directly into his account as treasurer, but was paid over to his brother, James P. Flanagan, and went into the latter's individual account, and it is claimed that the company through him got the benefit of the money loaned. Coal was mined and sold, and presumptively the money therefor was received and disbursed by plaintiff as treasurer. As officer and director he was a party to the loose way in which the business of the company seems to have been conducted. As treasurer and manager, for his evidence tends to show he was manager, at least of some of the operations, he was an accounting officer. That he had loaned the company money directly or indirectly through his brother, was not sufficient to entitle plaintiff to a recovery. It was his duty to account to his company for the moneys loaned it or received from other sources. It was not sufficient to entitle him to recover that he should pick out items of debit from his personal account, and sue upon them. His position as treasurer required him to show by clear evidence that his company was in fact indebted to him.

And respecting the items for services of horses, use of wagons, and other equipment, the record shows that the defendant had the option to buy this property at $1250.00; but plaintiff and his brother, James P. Flanagan, at the time the note was executed preferred to include in the note for the use of this property, $1,725.00, and afterwards to also return the property to plaintiff practically in as good condition as when it was received. The last item of the account is unsupported by a single voucher; it does not appear how much of this item was for money paid workmen, how much for freight or how much for express charges, &c. As a reason for not electing to purchase the property returned instead of giving the obligation of the defendant for its use, James P. Flanagan says the company had no money to pay for it. The reason does not impress us as a good one. Moreover, the amount charged seems exorbitant, and besides, there is evidence tending to show that defendant was to have the use of this property for its keep. Of course if properly presented this fact would have been a jury question.

As to the item for goods sold, with the large profit included, we do not say that under certain circumstances plaintiff would not have been entitled to the value of the goods regardless of their cost. But if he was the agent of the company to buy goods, and bought them with a view of turning them into the company at a large profit, and thereby opposing his personal interests to those of the company he was bound to represent, he would be entitled to nothing more than the actual cost of the goods. In his deposition he says in one place, that at the time of purchasing these goods he was "treasurer, general manager, and a member of the board of directors", and on a salary of $125.00 per month. At best it may be said that these phases of the case were not sufficiently developed to disclose the rights of the parties; and that upon the whole state of the record the verdict should not have been allowed to stand.

In reaching these conclusions we must not be understood as imputing to the Flanagans actual fraud or wrongful intention. The defendant company may be and perhaps is indebted to them, but to what extent can only be determined by a proper accounting. There should be an accounting in

some approved method, and the actual balance struck. Our conclusion is to reverse the judgment, set aside the verdict, and award the defendant a new trial.

*Reversed, verdict set aside, and new trial awarded.*