# CHARLESTON.

## MILLAN v. BARTLETT.

Submitted April 25, 1916.   Decided May 9, 1916.

1. MINES AND MINERALS—*Oil and Gas Lease—Assignments—Construction.*

   A lessee of oil and gas, who has assigned a portion of his interest in the leases, and agreed with his assignee to pay all delay rentals until oil or gas is produced, and who, although stipulating that he is not to be bound to make explorations, agrees that, before he will suffer any of the leases to lapse, he will notify such assignee and will assign to him all leases which he may not desire to keep alive, thereby impliedly covenants not to dispose of such leases to a stranger, without the consent of such assignee. (p. 371).

2. SAME.

   Such a covenant between the lessee and his assignee is personal and does not pass by a transfer of the leases by the covenantor to a stranger, so as to bind him.   (p. 371).

3. ASSIGNMENTS—*Property Subject—Right of Action.*

   Right of action for a breach of covenant is assignable; and no particular form of words is essential to pass the right; words manifesting a clear intention to assign are sufficient.   (p. 371).

4. MINES AND MINERALS—*Oil and Gas Lease—Assignment—Action for Breach—Damages.*

   In estimating damages, caused by the lapsing of oil and gas leases, suffered by one who is jointly interested with another, who has covenanted to pay all delay rentals for the mutual benefit of both, it is proper to take into account the selling value of such leases at the time the right of action accrued.   (p. 373).

5. EVIDENCE—*Opinion Evidence—Competency of Witness—Value of Lease.*

   A person experienced in the oil and gas industries and who is reasonably familiar with the lands on which the particular leases existed, lying in partially developed oil and gas territory, is a competent witness to testify concerning the value of the leases. (p. 373).

6. DAMAGES—*Remittitur—Interest.*

   Where, in an action for damages, the jury has assessed a certain amount and returned a verdict therefor, and finds that it shall bear interest from a certain prior date, it is not error for the

court to require the plaintiff to remit a certain portion of the interest, ascertainable by a certain date which determines the inception of the cause of action, and to enter judgment for the aggregate of principal and remaining interest.   (p. 374).

7.   TRIAL—*Verdict—Interrogatories to Jury.*
Interrogatories to the jury, which present immaterial questions of fact and such as, whatever might be the jury's finding thereon, would not control the general verdict, are properly refused.   (p. 375).

(MASON, JUDGE, absent.)

Error to Circuit Court, Marion County.
Action by A. F. Millan against F. W. Bartlett.  Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*G. M. Alexander, Tusca Morris* and *W. S. Meredith,* for plaintiff in error.

*E. F. Morgan, Harry Shaw* and *Thos. P. Jacobs,* for defendant in error.

WILLIAMS, PRESIDENT:

Defendant seeks by this writ of error to reverse a judgment recovered against him by plaintiff in the circuit court of Marion county in an action for breach of covenant. The case was formerly here on writ of error to a judgment sustaining a demurrer to the declaration and dismissing the action.  We held the declaration good, reversed the judgment and remanded the case for trial.  65 W. Va. 155.  Defendant, being the owner and holder of twenty-one oil and gas leases on as many different tracts of land in Marion county, for a valuable consideration assigned to plaintiff, by writing under seal, an undivided one-eighth (⅛) of the working interests therein, and covenanted (1) to relieve him of "payment of any part of the money necessary to keep the leases in force prior to the production of oil or gas on each of said leases," and agreed to pay all such money himself, but stipulated that he was not to be obliged to keep the leases in force, if he desired to let any of them lapse, and, in the event he should desire to let any of the leases lapse, he agreed to notify plaintiff before doing

so, and, if plaintiff requested it, agreed to assign to him such leases as he, (defendant), did not wish to continue in force; and, (2), although defendant expressly stipulated he was not bound to drill a well or wells, the declaration alleges he covenanted as follows: "that if he, the said defendant, should drill any oil wells upon said leases or any of them the same should be drilled at the expense of the defendant, and that if oil should be found the said plaintiff should have an option from the said defendant for 30 days after the completion of each of said wells, to pay to the said defendant the one-eighth part of the costs and expense of drilling such well or wells, and if the said plaintiff should elect to pay, and does so pay to the said defendant, then the said plaintiff should have and be entitled to have one-eighth working interest in such well or wells and the production thereof and should thereafter pay one-eighth working expenses of such well or wells;" and (3) "that after two wells be located and drilled at such points thereon as shall be agreed upon by the said defendant and the said plaintiff, and that if gas is found in paying quantities in either of said wells the costs and expenses of drilling such well or wells and the gas rentals therefor shall be paid by the said defendant, and that the said defendant shall be entitled to have the whole production therefrom;" and (4) "that if oil should be found in paying quantities in the first well drilled on the oil lease on Plum Run land, then the said plaintiff shall thereafter pay one-eighth of the rental on said Plum Run oil leases, and if oil shall be found in paying quantities in the first well drilled on land of Salt Lick, then the said plaintiff shall thereafter pay one-eighth of the rental on said lease, otherwise the said defendant shall pay all rentals as by the said contract the said defendant covenanted to do, as will appear by reference being had thereto."

Briefly stated, the breaches averred are that defendant did not pay the money necessary to keep the leases alive; did not assign to plaintiff the leases which he did not wish to keep in force; and did not notify plaintiff that he desired to permit the leases to lapse, but, on the contrary, without notice to plaintiff, sold and assigned an undivided half of all the working interest in all the leases to L. S. Neely and S. F. Sheakley,

and thereafter joined with them in an assignment to the Fairmont Gas & Light Company, a corporation, of the entire interest in all of said leases, and thereafter said company surrendered to the lessors ten of the most valuable of said leases, and immediately obtained from them leases in its own name, describing the leases thus being allowed to lapse. Nearly all the original leases bore date in January 1901, and were for a term of five years, except one, which was for six years. The assignment of one-eighth to plaintiff was on the 24th of August, 1901. On the 2nd of December, 1901, plaintiff assigned one-half of his interest to F. A. Prichard, and on that date both papers were acknowledged, but not recorded until the 6th of May, 1902. On the 13th of April, 1905, Prichard reassigned all his interest to plaintiff. Defendant's assignment of one-half of the whole working interest in all the leases to Neely and Sheakley was made on the 2nd of December, 1901, and the first assignment by defendant, Neely and Sheakley to the Fairmont Gas & Light Company of all the leases was on the 10th of March, 1902, the consideration therefor being $45,000 and the grantors reserving all the oil rights to themselves with the privilege of drilling therefor. Both parties to the deed had the privilege of drilling, and there were certain covenants relating to the rights of the respective parties to the product, in case a well produced oil or gas, and providing how the expense of drilling should be accounted for in case one party drilled a well which produced a product belonging to the other. But those covenants have no bearing on this case. The Fairmont Gas & Light Company also covenanted to keep the delay rentals paid on the leases, and, in case it decided to let any of them lapse, it agreed to give the grantors thirty days notice thereof, and at the end of that time its interest in any such lease was to cease. Neither of the aforesaid deeds made any mention of plaintiff's one-eighth, or provided for notice to him in case of a determination to drop any of the leases, but ignored his rights altogether. The last named deed was acknowledged on the 17th of March, 1902, and recorded on the 8th of April following. On the 16th of December, 1903, Bartlett, Neely and Sheakley united in assigning to the aforesaid company all the oil rights and inter-

est which they had reserved in the last mentioned deed, and this assignment likewise ignores plaintiff's interest. By the foregoing chain of title the Fairmont Gas & Light Company became the sole owner of all the leases in which plaintiff had been assigned a one-eighth by defendant; and, about April 1, 1905, it surrendered to the lessors the ten leaseholds in question, and immediately procured new leases on the same lands in its own name. At the time the old leases were surrendered they had about nine months to run.

Defendant's counsel insist that plaintiff has no right of action for the interest reassigned to him by Prichard; that if there was any breach of defendant's covenant, it occurred between December 2, 1901, when plaintiff assigned one-half his interest to Prichard, and April 13, 1905, when the latter reassigned it to plaintiff; and it is argued that the reassignment did not transfer Prichard's right of action, which had already accrued; that the covenant is one running with the land, and did not pass by a conveyance of the land, made after the breach had occurred. But neither Bartlett's assignment to Millan nor the latter's assignment to Prichard was of land. Both were for interest in undeveloped oil and gas leases, and neither professed to convey an estate in realty. The authorities cited in brief of counsel for the proposition that a covenant real, after breach, does not pass with the land are inappropriate. Bartlett's covenants are in no sense real covenants, but are purely personal, and wholly unlike covenants by a lessee to pay royalty oil, which are similar to rent reserved in many respects, and have been held to pass with the land. If Prichard's reassignment did not pass his chose in action it passed nothing, for his interest, as well as Millan's, in the leaseholds had passed by the assignments from Bartlett and his associates to the Fairmont Gas & Light Company, the last of which was made December 16, 1903, conveying all the remainder of their interest in the several leaseholds, without imposing any obligation on it to perform Bartlett's covenant. It would seem, therefore, the breach was complete at that time, Bartlett having then parted with all of his own, as well as Millan's right in the leaseholds. He thus put it beyond his power to comply with his covenant with Millan and,

to all intents and purposes, had broken it. But a right of action for breach of covenant, like any other chose in action, may be assigned, and Sec. 14, Ch. 99, Code, entitles the assignee to sue in his own name. *McConaughey* v. *Bennett's Exors.*, 50 W. Va. 172. "No formal words are necessary to make an assignment of a chose in action. Anything showing an intent to assign on the one side, and an intent to receive on the other, will operate as an assignment. It need not be in writing." *Bentley* v. *Insurance Co.*, 40 W. Va. 729. *Tingle, Admr.* v. *Fisher,* 20 W. Va. 497. Prichard assigned to Millan "all of his interest by virtue of an assignment by A. F. Millan to F. A. Prichard bearing date on second day of December, A. D. 1901." The terms here employed are sufficiently comprehensive to include any existing right of action he may have had, growing out of a breach of the defendant's covenants respecting the leases. The purpose of Prichard was evidently to assign to Millan whatever right or interest he had, whether it was an interest in subsisting leases, or a mere right of action for breach of a covenant pertaining thereto. "All interest by virtue of," includes all rights accruing from the interest he previously had in the leases.

The court held that the breach occurred on April 1, 1905, but it is immaterial, for the purposes of this writ of error, for us to decide whether it occurred on that date, or on the 16th of December, 1903, when Bartlett parted with all interest in the leaseholds. Bartlett is not prejudiced by the lower court's ruling on the point and can not complain. It is argued that Bartlett had not covenanted not to assign the leases, and, therefore, violated no covenant in doing so. But this is a *non sequitur;* he impliedly covenanted to do whatever was necessary to be done in order to perform his express covenants, and he could have complied with none of them, without retaining control of the leases and keeping them alive, so that Millan could have been given the privilege to take them over, if Bartlett did not longer desire to hold them. He not only deprived Millan of this opportunity, but actually conveyed away the right in the leaseholds which he had previously sold to him.

It is urged in brief that Bartlett did not permit the leases

to lapse. No, but he did what was equivalent thereto, so far as Millan's right is concerned, he assigned all his and Millan's rights in the leases to another, who refused to recognize his interest.

Counsel claim that plaintiff's right of action, if any existed, was against the Fairmont Gas & Light Company, which they insist took Bartlett's place by taking an assignment of the leaseholds; and as evidence that both it and plaintiff so construed the contract, it was shown that, after the Fairmont Gas & Light Company had become entire owner of all the leaseholds, it drilled two oil wells on the James L. Morgan lease, and permitted Millan and Prichard to pay one-eighth of the drilling and operating expenses and one-eighth of the working interest in said wells. But that circumstance does not prove that said company assumed to perform Bartlett's covenants, or that Millan released him from performance of them. There is no privity of contract or estate between said company and Millan. He was not consulted by Bartlett and his associates before they conveyed the leaseholds to it; and there is no evidence that Millan knew of, or acquiesced in their assignment, or that said company agreed with Bartlett to perform his covenants, or that Millan released Bartlett from his agreement. It is not necessary to know the motive that actuated the Fairmont Gas & Light Company in recognizing the interest of plaintiff in some of the leases. It is enough to know, that in accepting satisfaction from it, as to some of the leaseholds, not involved in this suit, plaintiff did not thereby release his right of action against Bartlett for the breach of covenants pertaining to other leaseholds which are involved in the suit.

It was not error to admit the testimony of plaintiff to prove the value per acre of the leaseholds. While the value stated by him is far in excess of that given by any other witness, it was, nevertheless, proper to let it go to the jury for what it was worth. He showed sufficient knowledge of such property to entitle him to give his opinion as to its value. He proved that he had been dealing, more or less, in oil and gas leases for twenty years, and was acquainted with the value of undeveloped leases, in the territory where the lands under leases,

here involved, were situated. For the same reason it was not error to admit the testimony of George E. Miller and John F. Phillips on the question of value. They were both experienced oil and gas men and familiar with the property covered by the leases here involved. The leaseholds covered 521 acres of land, and had nine months to run from April, 1905, the time when the court regarded the covenant as broken, and, as tending to prove plaintiff's damages, witnesses were allowed to testify as to the selling value per acre, of the undeveloped leases. Many of defendant's witnesses estimated the value at not more than 25c or 50c per acre, per quarter, which would mean 75c to $1.50 an acre, for three quarters, the life of the leases. These witnesses admitted, however, that their judgment was largely influenced by the short duration of the leases and the necessity of drilling each tract of land, within the life of the leases in order to extend them, which, they say, would require the expenditure of $75,000 to $80,000. But there is evidence that the Fairmont Gas & Light Company could have drilled a well on each tract within that time, and would have done so, had it not been able to get the leases renewed. Other witnesses of long experience in the oil and gas business, and who showed equal familiarity with the territory in question, estimated the value of the leaseholds at from $8.00 to $10.00 per acre. We know of no better method of proving the value of property, of the character here involved, and the consequent damages on account of its loss than the method the court adopted.

It is urged that the court erroneously amended the verdict of the jury. The jury rendered a verdict for $5,000, with interest thereon from December 16th, 1903, and, on defendant's motion to set it aside, the court required plaintiff to remit $387.50, being the interest on $5,000 from December 16, 1903, to April 1, 1905, the latter date being the time the court regarded the breach of the contract as having occurred. This was not an unauthorized modification of the verdict. Interest was only a matter of calculation and was clearly severable from the assessed damages; there was no dispute as to what had taken place on either of the dates named, and it became a pure question of law as to which date the breach occurred.

We have held that where there is data which will enable the court to see exactly how much has been improperly included in the damages assessed by the jury, it may require the plaintiff to remit such improper part, and render judgment for the remainder. Such a case is very different from one in which there has been a general assessment of damages without regard to itemization. *Duckworth* v. *Stalnaker*, 74 W. Va. 247; *Rodgers* v. *Bailey*, 68 W. Va. 186; and *Flanagan* v. *Flanagan Coal Co.*, 77 W. Va. 757, 88 S. E. 397.

Admitting as evidence the assignments from Bartlett to plaintiff and from plaintiff to F. A. Prichard and by the latter back to the plaintiff, is claimed to be erroneous. These writings were clearly admissible to prove the covenant sued on, and plaintiff's title to the right of action for its breach.

It was not error to admit in evidence the assignment from said Bartlett to L. S. Neely and S. F. Sheakley for a half interest in the leases, and the two subsequent assignments by them and Bartlett jointly to the Fairmont Gas & Light Company. They are the evidence of Bartlett's breach of covenant with plaintiff. By those several assignments Bartlett put it out of his power to comply with his covenant. The original leases to F. W. Bartlett were likewise properly admitted as evidence. They were essential to prove the terms of the leases, and the conditions therein, which Bartlett had covenanted with plaintiff to perform.

The court overruled defendant's motion to request the jury to return a special verdict, responding to a number of interrogatories, and this is assigned as error. These questions proposed were (1) whether any of the leases in question were actually suffered to lapse; and if so, which ones of them and when they lapsed; (2) whether Bartlett prevented plaintiff from requesting him to assign to plaintiff any of the leaseholds; and (3) whether defendant actually broke any of his covenants, and if so, which covenant, and when the breach occurred. None of these questions would have controlled the general verdict, except the last, and it was presented by the general issue. They were therefore properly refused. *Runyan* v. *Kanawha Water & Light Co.*, 68 W. Va. 609; *Andrews*

v. *Mundy,* 36 W. Va. 22; and *Richards* v. *Iron Works,* 56 W. Va. 510.

The giving of plaintiff's instructions Nos. 3 and 6 is complained of. They are as follows:

No. 3. "The Court instructs the jury that if they believe from the evidence the defendant Bartlett transferred and conveyed the ten leases, which are in controversy in this suit, divesting himself of all interest therein and control thereof, and that he failed to notify plaintiff of his intention to do so, and did not assign or offer to assign to said plaintiff such leases as he, Bartlett, did not desire to retain, and that the assignee of said Bartlett surrendered said leases and immediately took new leases in its own name, and if you further believe from the evidence that the plaintiff sustained damages by reason of the sale of said leases by said Bartlett and the subsequent surrender thereof, then you should find for the plaintiff the damages so sustained by him with interest thereon from the date plaintiff was entitled to said damages."

No. 6. "The Value of the leases sued for in this action may be ascertained by taking into consideration the location of the territory, the degree of development for oil and gas therein, the evidence of the witnesses as to what said leases were worth at and on or about the 1st day of April, 1905, together with all the other evidence in the case relating to the value of said leases."

The law, as the court has expressed it in No. 3, harmonizes with this opinion, unless it be in impliedly holding that the breach of Bartlett's covenant occurred when his assignee surrendered the leases, rather than when he parted with all his interest in them. It is needless to determine whether that is error or not, because, if error, it is not prejudicial to defendant. Its only effect would be to shorten the remaining life of the leases, and thus diminish the amount of damages plaintiff was entitled to recover.

Complaint is also made of the court's refusal to give to the jury defendant's instructions Nos. 3, 7, 9 and 10. No. 3 would have told the jury, that plaintiff's right to recover depended upon an actual denial of his interest in the new leases, by the Fairmont Gas & Light Company. Plaintiff was under no ob-

ligation to apply to it for an interest, nor did he have any reason to suppose it would recognize any interest in him, if he had so applied. His reliance was upon defendant's personal agreement with him. Instruction No. 7 would have submitted to the jury the construction of a written contract, which is a province exclusively for the court. 3 Encyc. Dig. Va. & W. Va. Cases 409. No. 9 was properly refused, because the effect of it was to tell the jury they must find for the defendant, unless they believed that the Fairmont Gas & Light Company "surrendered the most valuable portions of said leases," and immediately took leases in its own name, and "then and there and thereby prevented said plaintiff from requesting him, the said defendant, to assign to him, the said plaintiff, the aforesaid leases, which said defendant did not desire to keep in force and effect, and which said defendant as aforesaid so sold and conveyed as aforesaid." It was immaterial whether defendant, by his assignment, had prevented plaintiff from requesting him to assign the leases to plaintiff. The contract made it the duty of defendant to notify plaintiff, when he (defendant) desired to let any of the leases lapse, and thus give him an opportunity to demand their assignment to him. There was no obligation on plaintiff to make demand upon defendant, without such information. Defendant's selling and disposing of his entire interest, thus rendering it impossible for him to comply with his contract, has produced the same effect, so far as plaintiff is concerned, as if he had suffered the leases to lapse without notifying plaintiff.

Defendant's instruction No. 10 would have told the jury that, if they believed from the evidence the Fairmont Gas & Light Company stood ready and willing at all times to keep and perform defendant's covenants with plaintiff, they should find for the defendant. This was clearly erroneous. There was no privity of contract between plaintiff and said company, and no evidence to support such an instruction. Plaintiff testified, that on the 13th of May, 1905, he submitted to the Fairmont Gas & Light Company a written proposition to assign to him the same interest in the new leases, which it had taken, that he had had in the old ones, and it, by its officers,

positively declined to do so, saying it had been advised by its counsel that its title was good, and it was in no way liable to him . It is immaterial to inquire what induced plaintiff to try to get an assignment from the Fairmont Gas & Light Company. He may have been under the impression that it had agreed with Bartlett to assume his liability. But whatever may have been his motive, his unsuccessful effort in that direction does not estop him from pursuing his remedy against Bartlett, his covenantor.

The judgment will be affirmed.

*Affirmed.*