# CHARLESTON.

WILLIAMS V. S. M. SMITH INSURANCE AGENCY *et al.*

Submitted October 10, 1916.    Decided October 17, 1916.

1. CORPORATIONS—*Powers—Contracts—Notes.*

   Notes in the name of an insolvent corporation by its president, who appends thereto his official signature and designation, executed upon authority duly given, or, if originally unauthorized, ratified by acceptance and use of the proceeds therefrom for corporate purposes, create liabilities enforcible against it in any appropriate proceeding. (p. 17).

2. BILLS AND NOTES—*Stock—Dividends—Validity of Note.*
No jurisdiction to declare invalid a note in the name of an insolvent corporation by its president, the proceeds of which are intended and used to pay dividends on its capital stock, exists except upon averment and proof of insolvency contemporaneous with the declaration of dividends. (p. 20).

Appeal from Circuit Court, Mercer County.

Suit by C. L. Wiliams, receiver, etc., against the S. M. Smith Insurance Agency and others. From the decree, P. E. Wagner, receiver, etc., appeals.

*Affirmed in part. Reversed in part. Decree entered.*

*Davis, Davis & Hall,* for appellant.

*A. G. Fox,* and *Sanders & Crockett,* for appellee Williams.

*Harold A. Ritz,* for appellees North River Ins. Co. et al.

LYNCH, JUDGE:

After the former decision of this case, reported in 75 W. Va. 494, proof pertaining to the execution and validity of three notes made by the S. M. Smith Insurance Agency was introduced to show a liability payable out of the assets in the hands of its receiver. One of the notes the circuit court held sufficiently proved to participate in the distribution of these assets; the other two, not so proved. The one allowed and charged is the note for $4635 executed by the Smith Agency by S. M. Smith as president, payable to the Fidelity Banking & Trust Company. The notes disallowed were the $300 note executed by J. Lee Harne to the Smith Agency and discounted by the Fidelity Banking & Trust Company, and the $5000 note executed by the Agency to the First National Bank of Sutton; and it has appealed from the decree denying it relief, as have also other creditors of the Smith Agency, charging as erroneous allowance of the note held by the Fidelity Banking & Trust Company.

As to the manual execution of the three writings, and the authority of S. M. Smith as president to execute and negotiate them, the proof varies but little. He testifies that a by-law passed by the board of directors empowered him as president

and the secretary-treasurer to make and endorse notes when . and as necessary in the conduct of the business entrusted to them officially; and that each of them exercised this authority, with the knowledge of the company, without protest or objection, during the ten years' active operation of the corporation. Neither the book containing the by-law, nor the by-law or a copy of it, was produced, nor the absence of either definitely explained. Smith says the book was in his desk and the desk locked when he left Bluefield in 1911; that on his return he discovered the lock had been forced, the desk opened, and the book then and since undiscovered after a diligent and fruitless search. The testimony regarding the authority conferred, and the continuity and duration of its exercise on behalf of the Agency in the conduct and management of its affairs, is not denied. Rather it is corroborated by the books of the Fidelity Banking & Trust Company, the owner of about thirty-nine fortieths of the capital stock of the agency. Giving credence to the original testimony and corroborative proof, it can not reasonably be held, except as to the Harne transaction, that the notes payable to the banks were not executed by the president of the Agency with due authorization by the corporation, or, if without express authorization, with the continuous acquiescence of the principal in the acts of its agent, amounting to a ratification by the corporation, and hence binding it. *Bank* v. *Lumber Co.*, 70 W. Va. 558; see also the former decision herein, heretofore cited.

The proceeds of the note for $4635 of August 9, 1911, made to the Fidelity Banking & Trust Company by the Smith Agency, by S. M. Smith as president, were deposited to the credit of the maker, a regular depositor of the bank. Against the proceeds was charged a prior loan of the same amount by the bank to the Agency, evidenced by its note of January 25, 1911, the proceeds of which were likewise credited to it and applied to the payment of several smaller notes still earlier in date, executed in the same manner. Both Smith, and plaintiff as receiver of the bank, testified that the note of August 9, 1911, was given and accepted in payment of the pre-existing indebtedness. The records of the bank so showed, and the commissioner so found on the proof adduced on the order of

reference entered upon the remand of the case for that purpose. Indeed, the Smith Agency does not deny it received and realized the benefit of the note in controversy. On the contrary, the testimony of its president constitues an express admission of that fact. Hence, the decree establishing this note as a charge against the funds held by its receiver is unassailable.

The Harne $300 note of July 23, 1911, is exhibited in a much less favorable light. Whether the amount thereof entered into the decree is involved in obscurity. The commissioner reported it as a charge in favor of the Fidelity Banking & Trust Company, but to its allowance other creditors of the Smith Agency excepted. These exceptions the decree overruled and "in all things" confirmed the report: and the argument of the exceptors proceeded upon the theory that this note was decreed to the banking corporation. But the decree, when properly interpreted and understood, does not support that theory. An inspection of the decree, and an ascertainment by computation of the interest on the $4635 note decreed to the bank, showing that the aggregate of principal and interest is equivalent to the total amount found in its favor, leads to the conclusion that the $300 note was not held to be a charge against the funds of the Smith Agency, as seems obvious.

On presentation of the note by Harne to it the Smith Agency endorsed and re-delivered the note to him, and he discounted it to the Fidelity Banking & Trust Company, which credited the proceeds to his account. By plaintiff's testimony, based on the records of the bank, this note was given to it by Harne in renewal of a prior note for the same amount of March 24, 1911. He was then its cashier, and thereafter continued to be such until April 29 of that year. What benefit the Smith Agency derived from the note does not appear in any manner, except from the mere indefinite and inconclusive statement of its executive officer that apparently it was executed to the Agency in payment of premiums in arrearage on a life insurance policy solicited and sold to Harne by it. But Smith was absent and knew nothing of the transaction when it occurred. He had nothing to do with

the negotiation or discount of the note. That he admits. Nor did he as a witness point to any record or other source of information as a basis of his conclusion that the proceeds of the note were used in the business of the Agency. In fact, in answer to the specific inquiry whether the note was used for its benefit, he says "what was done with the money I could not state". He and plaintiff are the only witnesses on that point; and as to it the testimony of the latter stands virtually uncontradicted. How or for what purpose the money was or could have been expended for the use and benefit of the endorser is not obvious or apparent, as ostensibly it enured to the exclusive benefit of Harne himself, in whose name as owner the proceeds appeared on the books of the bank. So far as definitely appears, the Smith Agency was merely an accommodation endorser. Besides, the record is destitute of any proof of authority to make the endorsement, which appears on the instrument merely as "S. M. Smith Insurance Agency", without the addition of the name of any officer of the corporation. The endorsement, by the admission of Smith, was impressed on the note, in his absence, by a rubber stamp used by the Agency for that purpose in connection with commercial paper handled by it. By no witness is it shown who placed the name of the corporation upon the note as endorser. For aught shown, this may have been done by some person wholly unauthorized to act for the corporation in any capacity. Clearly, this note was not established as a valid liability in favor of the bank.

The $5000 note of December 14, 1909, made payable to the First National Bank of Sutton, was executed by "S. M. Smith Insurance Agency, by S. M. Smith, President". The evidence relating to its negotiation and the application of the proceeds therefrom is without conflict in essential particulars. It was discounted by the payee, who thereupon issued a four per cent interest bearing certificate of deposit therefor, payable to the Smith Agency. This certificate was discounted by the Fidelity Banking & Trust Company, upon the endorsement of the treasurer of the Agency, and the proceeds deposited to its credit therein. After a renewal, the certificate was paid by the First National Bank of Sutton to a subsequent

endorsee. Smith says the note was executed by him for the use of his principal, and the proceeds were applied for its benefit. The application thereof made, as further appears from his testimony, was to the payment of a dividend of the Smith Agency of over $5000 on its capital stock, declared by its directors in 1909.

Whether the Smith Agency then was insolvent, or, if so, what necessity existed for the immediate procurement of a loan to pay dividends declared—an expedient of questionable propriety if not of doubtful legal validity on a proper showing—or whether its earnings were sufficient in amount to warrant the declaration and payment of dividends, are questions for the solution of which the record furnishes no adequate data. Without such data, it is not permissible to impugn the motives prompting these corporate transactions. They may be suggestive of gross irregularities; but mere suggestions are not sufficient to condemn them. Earnings that serve as the basis of dividends, although actually realized, may not readily be available for immediate distribution when dividends are declared. If declared as the result of an innocent mistake, no liability attaches to directors or stockholders; although if done intentionally, with knowledge of the lack of sufficient earnings, such liability may arise. But surely it is essential for the imposition of such liability that the irregularity which may serve as the basis therefor must be averred and proved. Where there is neither averment nor proof, as in this instance, the court is without jurisdiction to warrant relief on that ground. Furthermore, the Smith Agency received and retained the proceeds of the loan, and used them for its corporate purposes. Under the principles announced upon the former appeal, it is now estopped to repudiate the acts of its president and treasurer as unauthorized, after having accepted the benefits of the loan with full knowledge of its negotiation. Hence, we think the note held by the First National Bank of Sutton was a valid charge against the funds in the hands of Bradshaw, receiver of the S. M. Smith Insurance Agency, and ought to be allowed to participate in the distribution of such assets.

For reasons stated herein, we affirm so much of the decree

as required a pro rata payment out of such assets to the Fidelity Banking & Trust Company on the note for $4635, and reverse the decree in so far as it refused to allow the $5000 note made by the S. M. Smith Insurance Agency to the First National Bank of Sutton. And, proceeding to enter such decree as the circuit court should have entered, we allow the $5000 note as a charge against the assets of the Agency, with interest thereon to the date of the decree below, and interest on the total amount thereof and the total amount decreed to the Fidelity Banking & Trust Company thereafter until the pro rata share of such assets is paid to each of such claimants.

*Affirmed in part. Reversed in part. Decree entered.*