# ·CHARLESTON.

## W. A. CHARLTON *v.* D. J. PANCAKE.

### (No. 5218.)

Submitted February 17, 1925.   Decided March 3, 1925.

1. JUDGMENT—*Notice of Motion for Judgment on Notes Held Good Against Demurrer or Motion to Quash.*

    A notice of motion for judgment by the payee to the maker of the notes sued on, correctly describing the notes, and advising the maker that on the day named he will demand judgment thereon, shows with reasonable certainty the nature and basis of the demand, and a demurrer to or motion to quash the same is properly overruled.  (p. 365).

    (Judgment, 34 C. J. §428.)

2. ACTION—*When Suit on Notice of Motion for Judgment is Commenced, Stated.*

    The beginning of a suit upon notice of motion for judgment, pursuant to section 6 of chapter 121 of the Code, is the day the notice is returned to and filed in the clerk's office, and not the day of the motion; and if the demand sued for is not then due, the action thereon is premature, and no judgment can then lawfully be pronounced thereon.  (p. 369).

    (Actions, 1 C. J. §409.)

3. EVIDENCE—*Admitting Hearsay Evidence Objected to by Party Injuriously Affected is Error.*

    Hearsay evidence is rarely, if ever, admissible; and it is error to admit such evidence if objected to by the party injuriously affected thereby.  (p. 369).

    (Evidence, 22 C. J. §166.)

4. JUDGMENT—*Admission in Evidence of Demand, Based on Note Not Due When Notice of Motion for Judgment was Filed, is Reversible Error.*

    Where, on the trial of a motion for judgment, one of the two notes sued on was not due when the notice was filed in the clerk's office and the suit thereby begun, the reception in evidence, over objection, of such immature demand constitutes reversible error.  (p. 372).

    (Judgment, 34 C. J. §432.)

5.  TRIAL—*Special Interrogatories, Answers to Which Would be Inconclusive of Rights of Parties, Properly Rejected.*

Special interrogatories to the jury the answers to which would be inconclusive of the rights of the parties, are properly rejected by the trial court.    (p. 373.)

(Trial, 38 Cyc. p. 1916.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Cabell County.

Proceeding by W. A. Charlton, on notice of motion for judgment against D. J. Pancake.    Judgment for plaintiff, and defendant brings error.

*Judgment reversed; verdict set aside; new trial awarded.*

*Wells Goodykoontz* and *T. W. Peyton,* for plaintiff in error.
*George S. Wallace,* for defendant in error.

MILLER, JUDGE:

In a proceeding upon notice of a motion for judgment, plaintiff, on June 5, 1924, recovered a verdict and judgment against defendant for $5,179.00, with interest and costs.    To that judgment the present writ of error was obtained.

By the notice, dated April 19, 1924, and filed in the clerk's office April 21, 1924, the defendant was warned that on May 16, 1924, which was the May term thereof, he would move the Circuit Court of Cabell County for a judgment against him for the sum of Five Thousand Dollars, with interest thereon from May 1, 1923, and costs of such motion, upon two certain promissory notes executed by him, dated November 1, 1923, as follows:    One for two thousand dollars, payable in 90 days, to W. A. Charlton, Trustee, at the Kanawha Valley Bank of Charleston, W. Va., with six per cent interest; the other for the sum of three thousand dollars, payable to W. A. Charlton, in 180 days, at the Kanawha Valley Bank of Charleston, W. Va., with six per cent interest.

On the return day of the notice defendant appeared and moved the court to quash it, on the ground that it was not sufficient in law; which motion was overruled.    He then tendered and filed a special plea in writing, to which plaintiff

demurred; which was overruled; and there was a general
replication by the plaintiff thereto; and issue was joined
on said plea.

The plea was in effect fraud and circumvention in their
procurement, and failure of consideration in whole and in
part for the notes sued on, and in substance was that plaintiff
fraudulently and falsely represented to defendant:   First,
that the business of the Pence Springs Water Company was
a profitable one, and that large sums of money could be made
by way of profits out of the terms of the contract which he
had with Messrs. Hatfield and Hughes, and which he then
assigned to defendant: second, that the material, machinery,
bottles, washers and other equipment owned by the Pence
Springs Water Company was in good condition, and was
suitable for the purpose for which it was being used; third,
that the business of bottling the Pence Springs water and
selling the same to the wholesale and retail trade was a
profitable one; fourth, that his contract with Hatfield and
Hughes, which he undertook for said notes to transfer to
defendant, was a transfer and sale of all the outstanding
stock of the Pence Springs Water Company, a corporation:
all of which representations, the plea avers, were false, and
known by plaintiff to be false, at the time they were so made
to him, but were relied on by defendant; and that in fact said
stock was worthless and of no value, though falsely repre-
sented by plaintiff to be of great value.

On the hearing here the first point of error is that de-
fendant's motion to quash the notice should have been
sustained; first, on the ground that the notice, which as held
in *Hastings* v. *Grump,* 89 W. Va. 111, served the double pur-
pose of process and pleading, does not show with reasonable
certainty the nature and basis of the demand or obligation
which it is proposed to reduce to judgment, that the same
was due and owing by defendant to plaintiff, and that the
demurrer thereto should have been sustained, but with leave
to amend.   This proposition was affirmed in *Pelley* v. *Hibner,*
93 W. Va. 169.

The first specification of defect in the notice relied on is
the general charge, after describing the notes, *"and neither*

*of which notes were paid but are now part due and unpaid."*
A stipulation in writing between counsel filed on the hearing,
is that the word "part" should read "past", and that the
record in the circuit court showed. With this correction
of the record, there can certainly be no lack of certainty as
to the nature or basis of plaintiff's demand.

The basis of the action is the two notes described, and that
they were past due and unpaid to plaintiff, who is the payee
therein. There is no such defect in the notice as rendered
the notice in *Anderson* v. *Prince,* 60 W. Va. 557, susceptible
to demurrer. The notice in that case failed to connect in
any way the defendant Smith with the note sued on. He
was neither maker, payee nor endorser so far as the record
showed, although he was notified that judgment on the note
would be demanded against him. In this case the defendant
is the maker of the notes, and the plaintiff is the payee therein.

The second ground for quashing the notice is that the
$3,000.00 note described therein was not in fact due at the
time the notice was served on defendant. The return of the
service itself is not found in the record; but the order of
the court in reference thereto recites that it was served on
April 19, 1924; and the clerk of the circuit court in making
up the record has copied the endorsement thereon as follows:
"Filed April 21, 1924, G. R. Seamonds, Clerk C. C. C. C."
If we may look to the endorsement on demurrer to the notice,
we find that at the time of service thereof on defendant, and
also when filed in the clerk's office, the $3,000.00 note was
not due, but when judgment was moved, on May 16, 1924,
that note was due. This being so, plaintiff's counsel contend
that action on such note had matured when the suit was
begun. As it is agreed that the note for $2,000.00 was due
before the service and the filing in the clerk's office, the motion
to quash was properly overruled.

The question of the right to recover on the $3,000.00 was
again presented on the trial, by objection to its introduction
in evidence, and on the ruling of the court on defendant's
motion to set aside the verdict and award him a new trial.
So it may not be out of place to consider here this question
in connection with the motion to quash. Our statute, section

6, chapter 121, Code, relating to the subject, says that a person entitled thereto may "obtain judgment for such money after twenty days' notice, which notice shall be returned to the clerk's office of such court fifteen days before the motion is heard." The requirement that defendant shall have twenty days' notice, and that the notice shall be returned to the clerk's office fifteen days before the motion is heard, are mandatory. But must the demand sued for be a matured one at the time of the service of notice, or at the time it is returned to the clerk's office? Plaintiff's counsel say that it need not be matured at the time of service, that as plaintiff in this case might have withheld notice until after maturity of the $3,000.00 note before filing it, and still have had time to file it fifteen days before the day of the motion, the prior filing can not deprive him of the right to judgment on the $3,000.00 note. Certainly in the application of the statute of limitations, and for other purposes, some time must be fixed as the date of the lis. In Virginia the statute, unlike ours, requires the notice to be returned to the clerk's office within five days after the service thereof. Construing the Virginia statute, Judge McDowell, in *Schofield* v. *Palmer,* 134 Fed. 753, held that if the notice is served before the liability of the defendant has matured, it would be subject to a plea in abatement, the same as a declaration prematurely filed would be. The correctness of this construction may be doubted in view of the five days' provision of the Virginia statute, and the fact that a notice so served may never be filed, and the proceeding allowed to abate. But after the notice is filed in the clerk's office, and the clerk has endorsed it, the plaintiff has lost control over his suit, except to dismiss it as in cases begun on regular process may be dismissed. In Burks' Pleadings and Practice, (2nd Ed.), §162, it is said with reference to the notice and quoting from *Furst* v. *Banks,* 101 Va. 208: "It is a private paper in the hands of plaintiff or his agent, and does not belong to the court until it is returned to, or more properly, filed in, the clerk's office. Then, and not till then, has the clerk, as such, any knowledge of or control over it." "And," says the writer, "as a result of the above reasoning, the court held that a proceeding by

motion under §3211 of the Code of 1887 could not be regarded as the *institution of an action* so as to warrant an attachment until the notice had been served and filed in the clerk's office, and that an attachment issued before return of the notice was void.'' In a note to this case referred to, reported in 8 Va. Law Reg. (1902-1903) p. 824, it is said: ''The main question passed on in the principal case is one of much practical importance, namely, from what time a proceeding by motion is to be considered as pending—the judicial answer to this question being that the proceeding is not actually pending until the notice is returned to the clerk's office, and hence an attachment issued prior thereto is premature. The ruling seems based on sound reason.'' See on the same subject also, 2 Barton's Law Practice, (2nd ed.) §245; 4 Minor's Inst., Part II, p. 1318; 34 C. J. 204; and on the subject of Proceedings Constituting Commencement, in General, see 1 C. J. 1153. In *Bellanfont* v. *Coleman*, (Tenn.), 7 Heisk. 559, (1868), it was decided with reference to a summary proceeding of this character, the *motion* not the *notice*, is the commencement of the suit. But in *Prewett* v. *Hilliard*, (30 Tenn.) 11 Hump. 423, the same court held that the notice being in the nature of a leading process and its service as the institution of the suit, therefore the service of the notice on the principal, when service on him alone is prescribed, will stop the running of the statute of limitations. Our statute, section 1, chapter 131, requires the clerk of the circuit court on or before every term to make out a docket of pending cases: ''First, cases of the state; and, secondly, motions and actions, in the order in which the notices of the motions were filed,'' etc. In *Knox* v. *Horner*, 58 W. Va. 136, decided when the statute required the notices to be filed in the clerk's office twenty days before the motion was to be made, it was said that the notice need not be returned to the clerk's office twenty days before the commencement of the term. In *Frey* v. *Miley*, 54 W. Va. 325, it was held that a suit brought prior to the maturity of the debt upon which it is predicated can not be sustained. It is a requisite to the maintenance of a suit that there be a cause of action at the date of its institution. *Boggess* v. *Bartlett*, 72 W. Va. 377.

In view of the nature of this proceeding and what has been said on the subject, we think that sound reason requires us to hold that the suit on notice of motion for judgment begins on the day the notice is filed in the clerk's office, and that if the cause of action has not then matured, the suit as to the immature demand would have to abate.

On the trial James A. Hughes, a witness for the plaintiff, over defendant's objection, was allowed to testify that certain persons, reputed stockholders, had told him that their stock in the Pence Springs Water Company had been delivered to Z. T. Vinson, Trustee; and, subject to like objection, he was allowed to specify the names of Coleman, Damron, and M. Z. White, as three of the persons who had told him they had sold their stock to Thomas Hatfield. This evidence was of course purely hearsay and inadmissible. It was offered by plaintiff in rebuttal of defendant's evidence given in support of the averments of his special plea, that his contract with plaintiff constituted a warranty that Hatfield and Hughes, as they represented, were owners of all the outstanding stock of the Pence Springs Water Company, and that defendant was entitled under his contract with plaintiff to the stock which plaintiff had then paid for or should have paid for under his contract with them, and also to all the outstanding stock of said company, which Hatfield and Hughes represented they owned and contracted to sell to plaintiff, as he, plaintiff, should pay for the same, and that to the extent of the stock outstanding in others and paid for by plaintiff and not delivered by him to defendant, the consideration for the notes sued on had failed.

Plaintiff rested his case on his interpretation of his contract with defendant, that he had thereby only undertaken to sell to him his contract with Hatfield and Hughes, and that defendant had therein covenanted to perform his unperformed agreements with them, and that defendant was bound to look to them for the performance of their contract, which he had assigned to defendant, and that any breach of their contract constituted no defense to said notes. When we look to plaintiff's contract with defendant, introduced in evidence, we find it does in terms, first sell and assign unto defendant plaintiff's contract with Hatfield and Hughes "for the pur-

chase of the stock of the Pence Springs Water Company,''
the date of which was June 1, 1923. But it was further
agreed therein by plaintiff, that all of the stock which had
been paid for by him under said contract should likewise be
assigned over to defendant. When we look to the Hatfield
and Hughes contract with plaintiff of June 1, 1923, we find
that they agree to sell to plaintiff ''the Pence Springs Water
Company, to-wit: $44,000.00 issued as of this date, upon the
following terms, that is to say: Total consideration for the
purchase of said $44,000.00 stock shall be $2,500.00 cash in
hand paid, on the execution of this contract, the receipt of
which is hereby acknowledged; $2,500.00 to be paid on or
before the 15th day of July, 1923, the residue of $20,000.00
to be paid at the rate of $500.00 per month, commencing on
the 1st day of September, 1923, all of which deferred pay-
ments are to be evidenced by notes of the Company.''

And it was further agreed thereby that all of the said
outstanding stock of said company should be issued in the
name of Charlton, Trustee, and placed in the hands of Z. T.
Vinson, in escrow, to be delivered to Charlton when paid for,
it being thereby understood that upon the cash payment, and
upon the payment of each of the deferred payments therein
provided for, such portion of the $44,000.00 of stock as was
represented by the $25,000.00 should be issued forthwith to
Charlton, Trustee, that is to say, upon the payment of
$2,500.00 a certificate for $4,400.00 of stock should be issued
to Charlton, Trustee, and upon the payment of any of the
other deferred purchase money notes, a like proportion of
the stock should be issued to him. In this contract Hatfield
represented himself to be the owner of 410 shares, and Hughes
to be the owner of 33 shares; but the evidence of the stock
books tended to show that Hatfield owned but 121 shares, and
Hughes 32 shares, together 153 shares of the 440 shares, and
that 287 shares, a majority, was outstanding and held by
other persons. True, defendant was let into possession of the
property by some one, presumably Charlton, with whom he
had the contract, but by what authority does not appear.
The board of directors would properly have control. De-
fendant contracted for all the stock, and without this title,

or a deed lawfully executed therefor, he could not rightfully remain in control.

But assuming that plaintiff purchased Charlton's rights under his contract with Hatfield and Hughes and was bound to look to them for performance thereof, by the terms of the contract, Charlton, on his cash payment, was entitled to $4,400.00 of the stock, and as the other payments were made by him, as provided, to additional shares in the proportion stipulated. Charlton's contract with defendant was made October 22, 1923. At that date he should have paid Hatfield and Hughes, or Vinson, Trustee, the July payment of $25,000.00, and the September 1st payment of $500.00, and have received a proportionate amount of the stock. Whether he did so or not does not appear; but is it not to be presumed that he did, and received the stock certificates called for? If so, defendant was, under the terms of his contract, entitled thereto. He swears that he never received from Charlton or Vinson any stock; that he demanded it, but was refused; and no one testified to the contrary. So it seems to us that to this extent there was a partial failure of consideration for the notes sued on. The case is not very well developed; and it is not as easily disposed of as it might have been, if the facts were fully developed. Plaintiff was bound to deliver to defendant the stock issued to him; and would he not be bound under his contract, not only to deliver to plaintiff the $4,400.00 stock issued to him on his cash payment, but also the stock due him on his two payments which matured prior to October 22, 1923, when he sold to defendant? The question is not clear. As the case must be reversed on other grounds, we leave the question open for final decision until the facts are better developed.

The third point of error is that the trial court improperly rejected the testimony of I. A. Balacaier respecting the cost of machinery necessary to equip the plant of the Pence Springs Water Company, so as to bring the equipment up to the alleged representation made by plaintiff at the time of the contract. As the case is now, presented by the pleadings and proof, we do not think this evidence was material. In the first place plaintiff denies that he made any such representations, and if

he did, the defendant visited the plant once or twice before the contract, and either satisfied himself respecting the character of the property, or had ample opportunity to do so, and did not rely on any supposed representation by plaintiff.

The fourth point against the judgment, is the refusal of the trial court to reject the note of $3,000.00, and the testimony relating thereto. As we have concluded this suit was begun on the day the notice of the motion was filed in the clerk's office, and that this note was not then matured, and the action thereon was premature, and that no recovery on it was proper, the ruling of the court in admitting it in evidence was erroneous.

Complaint is next made of the giving of plaintiff's instruction No. 1, and refusing defendant's instructions Nos. 1 and 5. Plaintiff's instruction No. 1, the only one proposed by him, told the jury in substance that by the contract of October 22, 1923, Charlton sold to defendant his contract with Hatfield and Hughes of June 1, 1923, and that unless they found from the evidence that defendant was induced to make said contract by false and fraudulent representations of the plaintiff, he was entitled to recover. Of course this instruction was wrong in so far as it involved the $3,000.00 note. True, the instruction did not tell the jury how much plaintiff was entitled to recover, but the jury undoubtedly understood they were to find the whole amount sued for. On the other hand, if the plea was good as a plea of failure of consideration, in whole or in part, as indicated, the instruction violated the rule against ignoring the issues presented by the defendant. In giving a peremptory instruction the trial court may not ignore the theories or issues presented by the opposite party. Besides, was it proper for the court to have construed the contract as the court did? True, it was a sale of the plaintiff's contract with Hatfield and Hughes; but was it not also a sale of the stock which plaintiff had paid for, and perhaps all that he should have paid for up to that time, as we have mentioned; and was there not an obligation on the part of plaintiff to deliver that stock to defendant; and if he failed in this, was there not partial failure of consideration for the notes?

The defendant's instruction No. 1, directing the jury to find for him, was of course properly rejected. Instruction No. 5 was likewise properly rejected. It would have told the jury that if they found the stock of the Pence Springs Water Company was without value as of October 22, 1923, then there was no consideration for the notes sued on, and the contract was void for want of consideration, and plaintiff was not entitled to recover in the case. In the first place there was no evidence justifying the jury in finding the stock had no value. It at least had the potential value of acquiring control of the physical property and assets of the water company; of the lease on the springs property, etc. This was what the defendant, as shown by the evidence, was endeavoring to obtain. He saw the property and took possession of it, and ran it for almost three months. Whether the stock was valuable in fact depended largely, as he appreciated, on the management and capital necessary to operate it. If it had both, it was his judgment it was a valuable property. After seeing the property he deliberately entered into the contract to purchase the stock.

Lastly, the complaint is that the court erroneously refused to propound to the jury the special interrogatories submitted by defendant's counsel, as follows:

"No. 1. What was the value of the corporate stock of the Pence Springs Water Company on October 22, 1923, the date of the contract between the parties to this suit.

"No. 2. What was the indebtedness of the Pence Springs Water Company on October 22, 1923, the date of the contract between the parties to this suit.

"No. 3. What was the value of the property of the Pence Springs Water Company on October 22, 1923, the date of the contract between the parties to this suit."

It is apparent from what we have said that any answers which the jury might have made to these questions would have been inconclusive of the rights of the parties, and they were properly denied. *Brogan* v. *Union Traction Company,* 76 W. Va., 698; *Millan* v. *Bartlett,* 78 W. Va., 367.; and other cases cited in notes to section 5, chapter 131, Barnes' Code, 1923.

Our conclusion is to reverse the judgment, set aside the verdict, and award the defendant a new trial.

*Judgment reversed; verdict set aside; new trial awarded.*