# CHARLESTON.

JAMES A. HUGHES *et al.* v. W. A. CHARLTON, *Trustee et al.*

(No. 5898)

Submitted October 25, 1927.    Decided December 13, 1927.

1.   TRUSTS—*Contract Describing Party as Trustee, Imposing Obligations of Trust Nature, Binds Him as Trustee, of*

*Which all Parties Dealing With Him as Such Must Take Notice.*

Where in a deed the grant is to the grantee as trustee, or in a contract one of the parties thereto is described as trustee, with duties and obligations thereby imposed of a trust nature, the term "Trustee" so employed will not be regarded simply as *descriptio personae*, but as having been used advisedly, and as creating in the trustee the trust relationship implied, and as binding him as trustee only, and of which all persons dealing with him as such must take notice.   (p. 646).

(Trusts, 39 Cyc. p. 58.)

2.  CORPORATIONS—*Contract for Sale of Stock Held to Bind Company and Not Trustee, for Payment of Deferred Purchase Money; Contract for Sale of Stock Held, Under Circumstances, to Constitute Plan of Reorganization of Corporation.*

Where, in a contract for the sale and purchase of stock of a corporation, made between persons claiming to be the owners of all the stock and another as trustee, the parties agree on terms, and such owners agree to have the stock transferred to the name of the purchaser as such trustee, part of which is to be paid for in cash and the residue to be represented by the several notes of the company which the purchaser agrees to procure the company to execute to the vendor, which together with the cash payments and the certificates of stock are to be placed *in escrow* in the hands of a third person, and when collected to be applied by him to pay obligations of the company for which the sellers are liable, the contract will not be construed as binding the purchasing trustee personally for such deferred purchase money, but the company only, and considered together with corroborating facts and circumstances, like those in this case, as constituting a plan of reorganization of the company.   (p. 649).

(Corporations, 14 C. J. § 1077; 14a § 3609 [Anno].)

(NOTE:  Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Cabell County.

Suit by James A. Hughes and others against W. A. Charlton, trustee, and others.   From a decree for plaintiffs, defendants W. A. Charlton and another appeal.

*Reversed; bill dismissed.*

*George S. Wallace,* for appellant Charlton.

*Wells Goodykoontz* and *T. W. Peyton,* for appellant Pancake.

*Vinson, Thompson, Meek & Renshaw* and *Harry Scherr,* for appellees.

MILLER, JUDGE:

These appeals were awarded upon the several petitions of the defendants, W. A. Charlton and D. J. Pancake, from the final decree pronounced in the cause on July 24, 1926, whereby they were adjudged to be liable to pay to plaintiffs the sum of $17,400.00, the amount which the decree ascertains to remain due plaintiffs for purchase price of certain stock of the Pence Springs Water Company by virtue, first, of a contract between plaintiffs and W. A. Charlton, Trustee, dated June 1, 1923; second, of a contract between said Charlton, Trustee, and said Pancake, dated October 22, 1923, by which latter contract the said Charlton purported to sell to said Pancake all his rights under said contract of June 1, 1923; and by which decree the circuit court further adjudged that of the said balance of $17,400.00 there was then due and payable the sum of $16,004.80, and that the said plaintiffs do recover of said Charlton and Pancake the sum of $16,004.80, with interest and costs and awarding executions against them unless paid within thirty days, and retaining the cause on docket for further decree against them for the balance.

The contract of June 1, 1923, pleaded and exhibited with the bill purports to be between Hatfield and Hughes describing themselves as owners of *all outstanding* stock of the Pence Springs Water Company, as parties of the first part, and W. A. Charlton, Trustee, party of the second part, and whereby in consideration of $10.00 cash in hand paid, the receipt whereof was thereby acknowledged, and the payments and covenants to be paid and performed as thereinafter provided, the said first parties *did thereby agree to sell* to the said second party the stock of the Pence Springs Water Company, namely, $44,000.00 *issued of this date,* upon the following terms, that is to say: "Total consideration for the purchase of said $44,000.00 stock shall be $2,500.00 cash

in hand paid, on the execution of this contract, receipt of
which is hereby acknowledged; $2,500.00 to be paid on or
before the 15th day of July, 1923, the residue of $20,000.00
to be paid at the rate of $500.00 per month, commencing on
the last day of September, 1923, *all of which deferred pay-
ments are to be evidenced by notes of the said company.*"

And thereby it was further "mutually understood and
agreed that all of the said outstanding stock of said company
will be issued in the name of W. A. Charlton, Trustee, and
placed in the hands of Z. Taylor Vinson, *in escrow,* to be de-
livered to W. A. Charlton, when paid for; it being under-
stood that upon the payment of each one of the deferred
payments, or the cash payment herein provided, such propor-
tion of $44,000.00 of stock as represented by said $2,500.00
shall be issued forthwith to said W. A. Charlton, Trustee,
that is to say; upon the payment of $2,500.00 in cash this
day received, a certificate for $4,400.00 of stock of the said
Pence Springs Water Company will be issued to the said
W. A. Charlton, Trustee, and upon the payment of any of
the other deferred purchase money notes, above described,
a like proportion of the stock will be issued to said W. A.
Charlton, Trustee."

By a subsequent provision the second party was given the
right to anticipate the payment of any of said notes before
maturity and, if he deems it necessary, it was thereby
"*further understood and agreed that he may increase the
capital stock of said corporation and sell same for the pur-
pose of liquidating the notes herein described.*"

Another provision supporting our construction of the con-
tract is "that all of the cash payments this day received, and
all subsequent payments, *shall* be applied to paying the ac-
counts payable to the Pence Springs Water Company,
amounting to $14,402.07, as of this date, before any distribu-
tion among the stockholders, and all balances of accounts
receivable after settlements and adjustments, as of the 1st day
of June, 1923, are to be turned over to the said party of the
second part as part of the Water Company assets."

The contract also contains some further provisions not material to the proper disposition of the case as now presented.

Supplementing this contract and signed by the same parties and pleaded in the bill, is a letter addressed to Z. T. Vinson, dated June 13, 1923, advising him that Hatfield and Hughes had that day *"contracted to sell* our stock in the Pence Springs Water Company to Mr. W. A. Charlton, Trustee, a copy of which contract" was therewith enclosed to him and providing "that all of the stock which is mentioned in said contract" was to be turned over to said Charlton, Trustee; and that the certificate therefor would be duly signed in blank and deposited with him, and that as the payments from said Charlton, Trustee, as provided in said contract, were made to him, he was to turn over to Charlton, Trustee, "the stock so deposited with him in the proportion stipulated in the contract".

And Vinson was further advised by said letter that it was "further understood that said Charlton, Trustee, will cause to be executed by the Pence Springs Water Company, notes for all the deferred payments mentioned in said contract, which notes, likewise, will be deposited with you for collection, and upon all payments made to you, either before the execution and delivery of notes, or such payments as may be made upon said notes to you, you will distribute to the creditors of the Pence Springs Water Company, a list of whom, and all amounts due from the said company, will be filed with you, and with the exception of the amount due from the Pence Springs Water Company to the Pence Springs Company, the payments upon said debts shall be made as the said Hatfield and Hughes shall direct. And after all of the debts of the Pence Springs Water Company have been so paid, then the residue of the purchase money arising from the sale of said stock, you are to pay the same all to Thomas Hatfield as and of the receipt of the purchase price as the same is paid to you by said Charlton, Trustee."

The defendant Pancake was brought into the cause and sought to be rendered liable to plaintiffs along with defendant Charlton personally by virtue of the second of the con-

tracts pleaded, providing as follows:

That for the consideration thereinafter mentioned, the party of the first part, Charlton, Trustee, thereby sold and assigned unto the party of the second part the contract of June 1, 1923, and it was thereby further agreed between the parties thereto, that all of the stock of the Pence Springs Water Company, which had been paid for under the Hatfield contract by the first party thereto should likewise be assigned to the said Pancake.

The consideration for the above assignment and transfer to be paid by the second party to the first party was as follows: "First: Five thousand dollars, two thousand dollars in three months, and three thousand dollars in six months, represented by notes, and as a further consideration the second party is to have five thousand dollars of the paid-up capital stock of the company, the increased capitalization of which is provided for in an agreement entered into the 20th day of October, 1923, between D. J. Pancake, W. A. Charlton and A. I. Balacaier."

This contract further provided that Pancake should perform all the obligations undertaken by the first party in the Hatfield contract, and should receive all of the stock which the said Hatfield and Hughes therein agreed to sell to the said Charlton, Trustee.

It was thereby further agreed that Charlton, Trustee, should pay all the obligations, bills and claims of said Pence Springs Water Company incurred since the date of the Hughes-Hatfield contract, and was to receive all accounts due the company, and which had been carried since the date thereof, the same to be collected and accounted for by the company.

The theory of the bill, according to its allegations, on which a personal decree against Charlton and Pancake was sought and obtained in the court below, was that by the terms of the contract of June 1, 1923, Charlton, Trustee, thereby intended to, and did, bind himself personally not only for the cash payment of $2,500.00 and the second $2,500.00 payment, which the bill acknowledges have been paid, but also for the several deferred payments of $500.00 each, aggregating $20,000.00, and for which the defendant

Pancake by his contract of October 23, 1923, with Charlton, Trustee, likewise bound himself personally to pay said deferred installments notwithstanding the specific provision in said first contract that such deferred payments were to be represented by the notes of said Pence Springs Water Company and not by the personal obligation of either Charlton or Pancake succeeding to Charlton's obligation. Such was the whole theory of the bill, which agreeably to the provisions of the contract, were positively denied by the answers of both Charlton and Pancake. On the contrary, the answers affirm that Charlton's contract with plaintiffs constituted a plan, thoroughly understood and thereby provided for, by which Charlton should acquire an interest as stockholder in the Pence Springs Water Company and be enabled through his trusteeship to sell and dispose of at least enough of the stock of said company which Hughes and Hatfield claimed to own, to pay off the debts of the Company, for which they had become personally liable, represented in the contract to be $14,402.07, but now conceded by Hughes to have been $19,000.00, and thereby also to effect a reorganization of the company; and that it was not the purpose or intention of Charlton or Pancake, his vendee, to become bound personally beyond the stock paid for by Charlton, but only by the notes of the company as stipulated in the contract. There was no attempt by the bill to plead around this specific provision of the contract of June 1, 1923, reiterated in the letter of advice to Z. T. Vinson, signed also by all parties to the contract, except only by the general charge that Charlton thereby bound himself to pay said deferred payments, not supported either by the contract itself, nor certainly by any evidence in the cause.

It is contended that the term "Trustee" appended to Charlton's name was merely *descriptio personæ;* but this theory could not operate to change the obligations of the contract to execute the notes of the company for the deferred payment. Besides, the *descriptio personæ* theory seldom applies when it involves the parties to the contract. They are presumed to use the term advisedly and to have notice of what it implies, and to be bound thereby. Moreover, in the

present case this would not relieve the parties to the contract from the specific provision providing how the deferred payments were to be made and represented. We must remember that we are in a court of equity where the parties are seeking an adjudication of their rights upon equitable principles. If a grantee in a deed for property is described as Trustee, all personal dealing with him in relation thereto would be charged with notice that the estate held by him might be charged with some trust. Hill, Trustees 41; *Taylor* v. *Davis,* 110 U. S. 330. While generally when after his signature one used the word "trustee", it is regarded simply as *descriptio. personæ,* but where it is appended to his name as grantee in a deed, some trust relationship is thereby implied. So where, as in this case, the deed or contract implies some active duties with respect to others involved or to be involved in the property, a trust is created thereby. The very terms of the contract of June 1, 1923, show that plaintiffs were to place *in escrow,* the stock held by them to be issued in the name of Charlton, Trustee. Trustee for whom? Manifestly for Hatfield and Hughes, or whoever owned it, until sold and after that for whomsoever might purchase it. The contract did not limit Charlton to the stock placed in his name as trustee in the hands of Vinson. It undertook to give him power to "increase the capital stock of said corporation and sell same for the purpose of liquidating the notes herein described". After being issued in the name of Charlton, Trustee, and placed in the hands of Vinson as provided, the legal title would be in Charlton for Hatfield and Hughes. He would be trustee for them as to the legal title at least. On the very day of the contract and before it was signed by Charlton, he had with him and had succeeded in interesting in the purchase of some of the stock, as plaintiffs well knew, the defendants, Lively, Hiner, Walker and others, and who actually paid for some of the shares of stock which plaintiffs had agreed to deposit with Vinson, transferred to Charlton, trustee. Charlton got their money and was entitled to the stock from Vinson, which he never did get. He had a duty under the contract to pay the money over to Vinson and take up the stock, have it transferred, and turned over to the

purchaser. To this extent at least Charlton was trustee for Hughes and Hatfield and these purchasers of the stock; and according to the evidence, Vinson, who got the money, has not turned over to Charlton or the purchasers the stock. The record shows that the only stock delivered or claimed to have been delivered to Charlton for the six to seven thousand dollars received by him was fifty shares owned by M. Z. White, assigned to Hatfield. Vinson claims to have sent this certificate to Charlton by mail, but Charlton denies having received it. In a copy of Vinson's letter he purports to say that this certificate was part of the stock included in Hatfield's sale to him. But the contract calls for shares "this day issued and signed in blank to Charlton, Trustee". Significant is the fact that an auditor who subsequently audited the books of the Pence Springs Water Company reported that he found the stock all standing on the books in the names of the original stockholders, not transferred to Hatfield or Hughes, nor to Charlton, trustee, signed in blank or otherwise.

And outside the written contract, the record shows Hughes and Hatfield at once put Charlton in possession of the property of the company; and by some irregular method, without an adequate amount of stock, record or otherwise, for a majority thereof had not been acquired, Charlton became nominal President and others Secretary and Treasurer, and this organization was apparently recognized by Hatfield. And the query presented is, why, if not to try and to work out a new organization of the company? Hatfield and Hughes who had been operating the property, and had, it appears, succeeded in running it hopelessly in debt and rendering themselves personally liable for much of it, were evidently ready and quite willing to get out of the management, and getting in some new money, and assist Charlton, entered into the contract of June 1, 1923. And they thereby did get out of Charlton and others altogether around $7,000.00, which was apportioned on debts for which they or none of them were liable. While so operating the property, was not Charlton representing them as Trustee? We cannot see how there can be any question about Charlton's representative capacity,

nor why he was not properly dealt with as trustee in the contract. He recognized his fiduciary capacity.

The purposes of the contract of June 1, 1923: That it was for the purpose of reorganization of the company and liquidating its debts by means of Charlton's agency or trusteeship seems obvious. The contract by its very terms seems quite persuasive, on this proposition, and the reason for the provision respecting the notes for the deferred payments is thereby explained. Of course with that end in view Charlton would be unwilling to become personally bound for $20,000.00, and he did not undertake to so bind himself by his contract. And the record of the subsequent acts and dealings of the parties with the stock and property, after Charlton had exhausted his personal efforts to dispose of more stock, and to successfully operate the property, and the proposal participated in by Hughes and Hatfield to organize a new company, is significant. The initial step in furtherance of this new corporation was Charlton's sale and transfer of his contract to Pancake, pleaded and exhibited with the bill. And we observe in this connection that two days before Charlton had entered into his contract with Pancake on October 22, 1923, namely on October 20, 1923, another contract was entered into between Pancake acting as trustee for the proposed new Pence Springs Water Company, W. A. Charlton acting as trustee for the present Pence Springs Water Company, and I. A. Balacaier, present owner of the Tri-Pure Water Company of Charleston, whereby the three parties agreed to enter into an agreement to organize and form a new corporation to be known as Pence Springs and Tri-Pure Water Company, and prescribing the basis of capitalization on which the three several properties should be taken over, including the Tri-Pure Water Company of Huntington, and stipulating that all three properties should be delivered free from debt or any incumbrances. And further providing that said A. I. Balacaier should be President and General Manager, W. A. Charlton, Vice President, and D. J. Pancake, Secretary and Treasurer, and the three of them constitute and act as a finance committee for the first year. This proposed company had the active cooperation of Hatfield and Hughes. They

knew about it, consented thereto, and Vinson, their attorney and trustee, actually subscribed for $1,000.00 of the stock on which he paid $250.00 in cash, and Hughes agreed to take $3,000.00, and Hatfield proposed to take in stock all over and above the amount of the debts of the company for which he was bound, which he would be entitled to under the Charlton contract. Pancake never took charge of the Pence Springs Water Company under his contract with Charlton. It was at once turned over to Balacaier, a practical water man it seems, to operate for the company pending an effort to complete the organization of the new company pursuant to the contract referred to, of October 20, 1923. His testimony in this case after having operated the property three months in effect is that it was old, the machinery practically worn out, and that it was impracticable to operate it without repairs of the old and the installation of new; that he had since he bought it from Hughes installed $8,000.00 to $9,000.00 worth of new machinery; that after the property was sold under a distress warrant and purchased by Hughes he had bought it from Hughes for $6,000.00 which was about all it was worth.

The principle of practical constructions of the contract by the parties, we think, is more pertinent to the theory of the defendants Charlton and Pancake, that it was simply a plan of reorganization, than to the theory of an absolute purchase by Charlton of all the stock, which plaintiffs pretended to own or control. It is suggested by counsel that Charlton could not bind the company by executing its notes for the deferred payments. As well could he bind the company in that way, when those professing to own all the stock authorized it, as he could with only the right to a small minority of the stock elect a board of directors, or appoint new officers and take charge of the physical property, and so also be authorized by the terms of the contract to increase the capital stock, and sell the same to pay debts incurred by plaintiffs. The irregularity of these dealings and provisions all go to strengthen the theory of defendants that the contract was simply a plan of reorganization, lastly emphasized, by the aid which plain-

tiff gave to the contract between Charlton, Pancake and Balacaier.

It is argued also against the defendants' theory that the notes were never executed, and it is replied with greater force that plaintiffs never issued or caused to be issued or transferred to Charlton, Trustee, any of the shares of the stock called for. The certificate for fifty shares which Vinson testifies he mailed to Charlton was described as fifty shares of M. Z. White assigned to Hatfield. This was not stock which was said to be in Vinson's hands issued to Charlton, Trustee, and not a share of any kind was ever issued to Lively, Hiner or Walker, who paid their subscription through the checks of the treasurer to Vinson.

Moreover, assuming personal liability of defendants, to whom are they liable under the contract to plaintiffs? Is the obligation not to Vinson for the specific creditors of the Company? But their obligation by the contract, if anything, is to cause the notes of the company to be executed and delivered to Vinson for the creditors. Such is not the relief sought. The pleadings and proofs do not justify such relief. The decree below should be reversed and the bill dismissed.

*Reversed; bill dismissed.*

LITZ, JUDGE, dissented.

WOODS, JUDGE, *(dissenting)*:

This proceeding was instituted in the circuit court of Cabell county by James A. Hughes and Thomas Hatfield and prays that W. A. Charlton, trustee, be required to disclose the names of the persons for whom he acted as trustee in the purchase of the stock of the Pence Springs Water Company, and for a recovery from him and other named defendants, the amount due plaintiffs by virtue of their contract with Charlton, executed June 11, 1923, and, further, that relief he had against D. J. Pancake, by reason of his contract with Charlton, dated October 22, 1923, whereby he assumed all of Charlton's obligations under the former contract with plaintiffs. On the hearing before the Court, all the defendants, except Charlton and Pancake, were dismissed from the cause.

Charlton and Pancake appeal from a decree against them for $16,004.08.

Prior to the execution of the contract of June 1, 1923, plaintiffs either owned or controlled all of the outstanding stock of the Pence Springs Water Company, engaged in the business of bottling and selling water from Pence Springs, Summers county. On the 11th day of June, 1923, this contract was entered into, whereby plaintiffs, as such owners, sold to Charlton (who was designated therein as trustee) the stock of said corporation, aggregating $44,000.00 for the consideration of $25,000.00, of which purchase price $2,500.00 was paid in cash, $2,500.00 was agreed to be paid on or before July 15, 1923, and the remaining $2,000.00 was to be paid at the rate of $500.00 per month, commencing September 1, 1923, ''all of which deferred payments were to be evidenced by notes of the company'', and Charlton to have the right, if he so desired, to sell additional stock in the corporation in order to raise the money to complete the payments of the stock. And the stock sold to Charlton was to be placed in escrow in the hands of Z. T. Vinson and to be delivered as paid for, and the purchase price was to be paid to the said Vinson, who was, out of the purchase money, first to pay certain debts of the Pence Springs Water Company, aggregating $14,402.07, before turning over any money to plaintiffs. Charlton signed this contract as trustee, and Hughes and Hatfield, as the ''owners of all outstanding stock'' of said company.

At the time of the delivery of the foregoing contract, a letter of agreement was addressed to Vinson, who had been designated to hold the stock, receive payments therefor, etc. This latter agreement provides that Vinson is to turn over stock (certificate of which is placed in his hands signed in blank) as Charlton, trustee, makes payments, in proportion of $25,000.00 to $44,000.00; that Charlton, trustee, will cause to be executed by the said corporation, notes for all the deferred payments mentioned in said contract, said notes to be deposited with Vinson for collection; that Vinson is to pay creditors designated by plaintiffs; and that the residue, after payments of debts, be turned over to Thomas Hatfield.

Charlton insists in this appeal that the entire transaction can be explained by the two foregoing writings, when read together, and set them both out in full in his brief in this Court. He proceeds on the theory that the agreement between him and the plaintiffs was for the purpose of bringing about a re-organization of the company, which was heavily indebted at that time, as shown on the face of the contract and the evidence adduced. As this plan of re-organization is not shown by the pleadings or evidence, if such is shown to exist, it must, as counsel for Charlton contends, be found in the foregoing writings. But do the writings so show? The mere appendage "trustee" to Charlton's name and signature is not of itself sufficient to indicate that the obligation incurred under the contract was that of a third person. *Scott* v. *Newell,* 69 W. Va. 118; *Thompson & Lively* v. *Mann,* 53 W. Va. 432; *State* v. *Hudkins,* 34 W. Va. 370; *Bank* v. *Lewis County,* 28 W. Va. 273; *Rand* v. *Hale,* 3 W. Va. 495. The statements in the contract and the escrow agreement to the effect that the deferred payments are to be evidenced by notes of the company, and that if Charlton should deem it necessary he "may increase the capital stock of said corporation and sell same for the purpose of liquidating the notes herein described", are relied on. The first statement is amplified by the escrow agreement to the effect that Charlton, trustee, "will cause to be executed by the Pence Springs Water Company, notes for all of the deferred payments mentioned in said contract". But these do not of themselves show that Charlton is to be relieved of the personal liability under his contract. It would rather show that Charlton had agreed that the Water Company would back his promise to pay. And the latter provision regarding the issuance of additional stock seems on its face to be inserted for the express purpose of aiding Charlton in the sale of stock in the Company and getting money to pay for his property. Had this not been inserted in the contract, Charlton would have been handicapped by not having any stock to turn over to those whom he sought to interest in the venture to the extent of buying stock. There is ample authority to the effect that the two papers may be read together. See 6 R. C. L. 850.

While we have held in many cases that the contract is the depository of all agreements between the parties *(Jones* v. *Kessler,* 98 W. Va. 1), yet where the contract is not clear, we are permitted to look to their acts at the time of entering into the contract and their subsequent conduct in relation thereto, for the purpose of determining its proper interpretation. 13 C. J. 546; *Holdred Colliers* v. *Boone County Coal Corp.,* 97 W. Va. 109; *Summit Coal Co.* v. *Raleigh Smokeless Fuel Co.,* 99 W. Va. 11; *Clark* v. *Sayers & Lambert,* 55 W. Va. 512; *Smith* v. *South Penn Oil Co.,* 59 W. Va. 204; *Hall Mining Co.* v. *Consolidated Fuel Co.,* 69 W. Va. 47; *Myers* v. *Carnahan,* 61 W. Va. 414; *Lovett* v. *Central W. Va. Gas Co.,* 73 W. Va. 40; 5 Enc. Dig. Va. & W. Va. Rep., 282. Hughes and Hatfield exercised no rights in the corporation after the contract with Charlton. Charlton, however, took possession of the minute book and other records and documents of the Pence Springs Water Company, and went to Pence Springs and took personal charge of the property for several months and had himself elected president of the company. He made payments aggregating $6,000.00 on the purchase price. He then entered into the contract hereinbefore referred to with Pancake, selling the latter his rights under the contract with plaintiffs for $5,000.00, taking Pancake's two notes aggregating that amount, with provision that Pancake was to assume payment of the balance remaining unpaid under Charlton's contract. Pancake having defaulted in payment of notes, Charlton, in his own name, sued Pancake and recovered a judgment for said amount. Charlton states that he was not "acting as trustee for anybody." Likewise the defendants dismissed from this suit say Charlton was not their trustee.

The foregoing acts show that Charlton recognized the debt as his own debt but was simply laboring under a false impression that when he sold the contract to Pancake his liability thereunder terminated. All these actions would tend to defeat any possible contention on the part of Charlton that the contract purported to contain a re-organization plan of the company, and that he was not personally liable. The fact that Charlton was to execute notes to the company, etc., in view of the fact that he never attempted to execute

the same would tend to show that said notes were to be additional security and that plaintiffs looked primarily to Charlton for payment. Suppose the terms of the contract had been carried out by Charlton and Pancake, and Vinson had turned over the stock to them. Would Hatfield and Hughes have any interest therein? Assuredly not. Who would be in position to contend that Charlton and Pancake did not own such stock? No one, so far as this record discloses. This is the test.

Since Charlton is personally bound for the purchase price of the stock, Pancake, who agreed under his contract with Charlton to "perform all obligations undertaken" by the latter under contract of June 1, 1923, is likewise bound. *Charlton* v. *Pancake*, 98 W. Va. 363. Under his contract Pancake was to receive in consideration of the above, and $5,000.00, "all of the stock which the said Hatfield and Hughes therein agreed to sell to the said Charlton, trustee". Having assumed the indebtedness contracted by Charlton, he is also bound. This is the holding of the learned chancellor in the court below. The rule established by the repeated decisions of this Court, both as to law and equity, is that the finding of the circuit court as to facts in issue, unless against the plain preponderance of the evidence, is conclusive on this Court. *McBee* v. *Deusenberry*, 99 W. Va. 176.

While plaintiffs' rights to maintain this suit in equity is challenged, we are of opinion that they are entitled to come into equity, on the ground that Pancake, not being a party to the contract, could only be proceeded against in equity. And since equity has taken jurisdiction for that purpose, it retains jurisdiction for all purposes. *Petty* v. *Warren*, 90 W. Va. 397; *King* v. *Scott*, 76 W. Va. 58; *Hamilton* v. *Public Service Co.*, 88 W. Va. 573.

While the appellants objected to plaintiffs' motion to refer this cause to a commissioner of the circuit court to ascertain the indebtedness of the Pence Springs Water Company of the 1st day of June, 1923, and provided to be paid out of the purchase price of the Pence Springs Water Company, under said contract of June 1, 1923, and further moved the court to appoint a special receiver therein to collect and hold the recovery therein, pending the report of the said Commis-

sioner, and said objection was sustained by the court, I believe that such reference should have been made for the purposes specified. And to this end alone, I would reverse and remand this cause.